## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | **CASE NO. 24-41618** |
| **ORYX OILFIELD SERVICES, LLC,** | § | |
| | § | Chapter 11 |
| Debtors[1]. | § | |
| | § | **Jointly Administered** |
| _____ | § | |
| In re | § | |
| | § | **CASE NO. 24-42337** |
| **MATTHEW JOE MAHONE AND** | § | |
| **LEIGH ANN MAHONE,** | § | Chapter 11 |
| | § | |
| Debtors. | § | |

---

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS

---

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") having:

a.      commenced these chapter 11 cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on July 12, 2024, in the instance of the Corporate Debtors and October 1, 2024, in the instance of the Mahones (the "**Petition Date**");

b.      continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.      filed, on May 19, 2025, (i) the _Second Amended Joint Plan of Reorganization for the Debtors_ [Docket No. 283] (the "**Solicited Plan**")[2]; and (ii) the solicited version of the _Second Amended Disclosure Statement for for the Joint Plan of Reorganization for the Debtors_ [Docket No. 282] (the "**Disclosure Statement**")[3];

---

[1]    The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Oryx Oilfield Services, LLC (2839), Oryx Oilfield Holdings, LLC (5964), Kodiak Excavation and Utilities, LLC (5663), Kodiak Trenching and Boring, LLC (5045) (collectively, the "Corporate Debtors"), and Matthew Joe Mahone and Leigh Ann Mahone (the "Mahones"). The Debtors are all headquartered and operated from and/or reside at 4000 N. White Chapel Blvd., Southlake, Texas 76092.

[2]    Docket No. 90 in Case No. 24-42337.

[3]    Docket No. 89 in Case No. 24-42337.

    d.        obtained, on May 21, 2025, the *Order (I) Approving Second Amended Disclosure Statement for the Second Amended Joint Plan of the Debtors, (II) Scheduling a Hearing to Consider Confirmation of the Joint Plan, (III) Establishing Voting and Objection Deadlines, and (IV) Approving Balloting, Solicitation, Notice, and Voting Procedures* [Docket No. 286] (the "**Disclosure Statement Order**")[4];

    e.        filed, on May 22, 2025, the *Notice of Hearing to Consider Confirmation of Debtors' Second Amended Joint Plan of Reorganization* [Docket No. 288] (the "**Confirmation Hearing Notice**")[5];

    f.        caused solicitation materials and notice of the deadlines for voting on the Plan (as defined below) and objecting to confirmation of the Plan to be mailed on May 23, 2025, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Bankruptcy Local Rules of the United States Bankruptcy Court for the Eastern District of Texas (the "**Local Rules**"), and the Disclosure Statement Order, which Disclosure Statement Order also approved, among other things, voting and tabulation procedures (the "**Voting Procedures**") and related notices, forms, and Ballots;

    g.        filed, on June 24, 2025, the *Notice of Filing Plan Supplement to the Second Amended Joint Plan of Reorganization for the Debtors* [Docket No. 304] and on June 26, 2025, the *Notice of Filing Second Plan Supplement to the Second Amended Joint Plan of Reorganization* [Docket No. 315] (the "**Plan Supplement**")[6];

    h.        filed, on June 30, 2025, the *Notice of Filing Plan Modification to the Second Amended Joint Plan of Reorganization for the Debtors* [Docket No. 334] ("**First Plan Modification**")[7];

    i.        filed, on July 1, 2025, the *Notice of Filing Second Plan Modification to the Second Amended Joint Plan of Reorganization for the Debtors* [Docket No. 338] ("**Second Plan Modification**")[8] and together with the Solicited Plan and the First Plan Modification, the "**Plan**")[9], a copy of which is annexed hereto as **Exhibit A**.

The Court having:

    a.        set May 19, 2025, as the voting record date (the "**Voting Record Date**");

    b.        set May 23, 2025, as the date by which the Debtors must mail the solicitation materials;

---

[4]    Docket No. 94 in Case No. 24-42337.

[5]    Docket No. 95 in Case No. 24-42337.

[6]    Docket No. 107 and 109 in Case No. 24-42337.

[7]    Docket No. 112 in Case No. 24-42337.

[8]    Docket No. 114 in Case No. 24-42337.

[9]    Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan. The rules of interpretation set forth in Article I.B of the Plan shall apply.

c.  set June 27, 2025, at 4:00 p.m. (Prevailing Central Time) as the deadline by which Ballots must be received by the Debtors' counsel (the "**Voting Deadline**");

d.  set June 25, 2025, at 4:00 p.m. (Prevailing Central Time) as the deadline by which objections to the Confirmation of the Plan must be filed (the "**Confirmation Objection Deadline**");

e.  set June 30, 2025, as the deadline by which the Debtors shall file the Voting Declaration;

f.  reviewed the Plan, the Plan Supplement, the Plan Modifications, the Voting Declaration, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including any and all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

g.  held the Confirmation Hearing on July 1, 2025;

h.  heard the statements, arguments, and objections, if any, made by counsel in respect of Confirmation;

i.  considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

j.  taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases; and

k.  overruled any and all objections to the Plan and to Confirmation and all statements and reservations of right not consensually resolved or withdrawn unless otherwise indicated herein.

**NOW**, **THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation, and the record established at the Confirmation Hearing, as well as the entire record of the Chapter 11 Cases, establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact and Conclusions of Law, and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.     Findings and Conclusions.**

1.       The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. The findings and conclusions of the Bankruptcy Court pursuant to Bankruptcy Rule 7052 set forth in the record at the Confirmation Hearing, if any, are incorporated as if set forth herein.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.     Jurisdiction, Venue, and Core Proceeding.**

2.       The Court has jurisdiction over the Chapter 11 Cases pursuant to section 1334 of title 28 of the United States Code.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code, and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

**C.     Eligibility for Relief.**

3.       The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.     Commencement and Joint Administration of the Chapter 11 Cases.**

4.       On their respective Petition Date, each Debtor commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By prior order of the

Bankruptcy Court, the Chapter 11 Cases of the Corporate Debtors were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An official committee of unsecured creditors was appointed in the Chapter 11 Cases of the Corporate Debtors (the "**Committee**"). No trustee or examiner has been appointed in the Chapter 11 Cases.

**E.     Judicial Notice.**

5.      The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

**F.     Notice.**

6.      Due, timely, proper, and adequate notice of the Plan and the Confirmation Hearing, together with the deadlines for voting to accept or reject the Plan as well as objecting to the Plan, has been provided substantially in accordance with the Disclosure Statement Order.

7.      Such notice was appropriate and satisfactory based upon the facts and circumstances of the Chapter 11 Cases and pursuant to sections 1125 and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, 3018, and 3020, and other applicable law and rules. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required, and due, proper, timely and adequate notice of the Confirmation Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable nonbankruptcy law.

**G.     Solicitation.**

8.      The Solicited Plan, the Plan Supplement, the Disclosure Statement, the Ballots, the Confirmation Hearing Notice, and the other materials distributed by the Debtors in connection with

solicitation of the Solicited Plan (collectively, the "**Solicitation Package**"), as well as the Solicited

Plan and the Plan Supplement, were transmitted and served in compliance with the Bankruptcy Rules,

including Bankruptcy Rules 3017 and 3018, with the Local Rules, and with the Voting Procedures

approved by the Disclosure Statement Order.

9.      As set forth in the Certificate of Mailing [Docket No. 292][10] the Solicitation Package

was transmitted to and served on the eligible Holders of Claims in the Classes of Claims entitled to

vote to accept or reject the Plan (the "**Voting Classes**").  Each Holder of a Claim in the Voting

Classes received a Ballot.  The form of the Ballots adequately addressed the particular needs of the

Chapter 11 Cases and was appropriate for the Holders of Claims in each Voting Class.  The

instructions on each Ballot advised that for the Ballot to be counted, the Ballot must be properly

executed, completed, and delivered on or before the Voting Deadline.  The period during which the

Debtors solicited acceptance of the Plan was a reasonable period of time for Holders of Claims in the

Voting Classes to make an informed decision to accept or reject the Plan.

10.      As set forth in the Certificate of Mailing [Docket No. 293][11] the Disclosure Statement

Order and Notice of the Confirmation Hearing were mailed to all Holders of Claims in non-voting

Classes.

11.      As described in and as evidenced by the Voting Declaration, the transmittal and service

of the Solicitation Package (all of the foregoing, the "**Solicitation**") was timely, adequate, and

sufficient under the circumstances and no other or further Solicitation was or shall be required.  The

Solicitation complied with the Voting Procedures, was appropriate and satisfactory based upon the

circumstances of the Chapter 11 Cases, was conducted in good faith and was in compliance with the

---

[10]   Docket No. 100 in Case No. 24-42337.

[11]   Docket No. 101 in Case No. 24-42337.

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and any other applicable rules, laws, and regulations.

**H.    Voting.**

12.    On June 30, 2025, the *Declaration of Jeffery M. Veteto Regarding the Tabulation of Votes in Connection with the Second Amended Joint Plan* [Docket No. 332] (the "**Voting Declaration**")[12] was filed with the Bankruptcy Court, certifying the method and results of the Ballots tabulated for the Voting Classes.  The results of the Voting Declaration are adopted as findings of the Bankruptcy Court and are incorporated by reference herein.  As evidenced by the Voting Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Voting Procedures, and the Local Rules. Classes 2, 4, 6 and 9 had no votes. Classes 3, 5, 8, 10 and 11 voted to accept the Plan. Class 7 voted to reject the Plan.

**I.    Plan Supplement.**

13.    The Debtors filed the Plan Supplement consisting of, *inter alia*: the Schedule of Causes of Action, the Schedule of Executory Contracts to be Assumed, the Schedule of Subcontractor Claims, the Schedule of Anticipated Equipment to be Sold and, the Form of Trust Agreement for Oryx Creditors' Trust.

14.    All such materials comply with the terms of the Plan, and the filing and notice of the Plan Supplements was proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all applicable law and no other or further notice is or shall be required. Subject to the terms of the Plan, the Debtors may alter, amend, update, or modify the Plan Supplement before the Effective Date.

---

[12]    Docket No. 113 in Case No. 24-42337.

**J.      Modifications of the Plan.**

15.      Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the Solicited Plan as reflected herein, and in the Plan Modifications prior to entry of this Confirmation Order.  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Solicited Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially and adversely change the treatment of any Claims, (d) require re-solicitation of any Holders of any Claims or Interests, or (e) require that Holders of Claims in the Voting Classes be afforded an opportunity to change their previously cast acceptances of the Solicited Plan.  Under the circumstances, the form and manner of notice of the proposed Plan Modifications are adequate, and no other or further notice of the proposed Plan Modifications is necessary or required.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Solicited Plan or who are conclusively presumed to have accepted the Solicited Plan are deemed to have accepted the Plan as modified by the Plan Modifications.  The Holders of Claims in the Voting Classes are not permitted to change their respective acceptances to rejections as a consequence of the Plan Modifications.

**K.      Bankruptcy Rule 3016.**

16.      In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the Plan proponents within the meaning of section 1129 of the Bankruptcy Code.  The Debtors appropriately filed the Disclosure Statement with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**L.      Burden of Proof: Confirmation of the Plan.**

17.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**M.      Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

18.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

(i)      Proper Classification—Sections 1122 and 1123(a)(1).

19.      Article IV of the Plan provides for the separate classification of Claims and Interests against the Debtors into fourteen Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims or Interests contains only Claims or Interests that are substantially similar to other Claims within that Class.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)      Specified Unimpaired Classes—Section 1123(a)(2).

20.      Article IV of the Plan specifies which Claims against the Debtors are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code:

(iii)      Specified Treatment of Impaired Classes—Section 1123(a)(3).

21.      Article IV of the Plan specifies which Classes of Claims against the Debtors are Impaired under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code:

(iv)    No Discrimination—Section 1123(a)(4).

22.    Article IV of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest in accordance with the Plan, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)    Adequate Means for Plan Implementation—Section 1123(a)(5).

23.    The Plan, including the various documents and agreements in the Plan Supplement, provides adequate and proper means for implementation of the Plan, including, without limitation: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and this Confirmation Order that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) the execution of the Trust Agreement; (d) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law;  (d) the issuance of the New Equity Interests as set forth in the Plan; and (g) all other actions that the Debtors, KCM or the Reorganized Debtor, as applicable, determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

24.    This Confirmation Order, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorizes, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

10

(vi)     <u>Voting Power of Equity Securities—Section 1123(a)(6)</u>.

25.     The organizational documents of any surviving entity have been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities.  As such, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii)    <u>Designation of Directors and Officers—Section 1123(a)(7)</u>.

26.     The directors and officers of any surviving entity, to the extent known, have been disclosed or will be designated by the Plan Funder.  Based on the foregoing, the initial directors and officers will be deemed to have been selected and appointed in accordance with the interests of creditors and equity holders and with public policy, and, therefore, satisfy section 1123(a)(7) of the Bankruptcy Code.

(viii)   <u>Impairment / Unimpairment of Classes—Section 1123(b)(1)</u>.

27.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.  Specifically, Article IV of the Plan impairs or leaves Unimpaired each Class of Claims and Interests.

(ix)     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases—
Section 1123(b)(2)</u>.

28.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article VIII of the Plan provides for the assumption or rejection of certain of the Debtors' Executory Contracts and Unexpired Leases on the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code.

(x)      <u>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and
Causes of Action—Section 1123(b)(3)</u>.

29.     The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and

11

controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The compromise and settlement of such Claims and Interests embodied in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

30.     The exculpation, described in Section 10.7 of the Plan (the "**Exculpation**"), is appropriate under applicable law because it was proposed in good faith and is appropriately limited in scope.  Without limiting anything in the Exculpation, The  Committee and  the Plan Proponents and their professionals shall, on and after the Confirmation Date, not be liable for any Cause of Action arising in connection with or out of the administration of this Chapter 11 Case, the formulation, negotiation or implementation of this Plan, the good faith solicitation of acceptances of this Plan in accordance with Bankruptcy Code §1125(e), pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, except for gross negligence or willful misconduct as determined by a Final  Order of the Bankruptcy Court. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or Cause of Action against the Committee or the Plan Proponents or professionals employed by the Committee or the Plan Proponents for which such persons have been exculpated from liability pursuant to the preceding sentence. The Exculpation, including its carve-out for actual fraud, willful misconduct, and gross negligence, is consistent with established practice in this jurisdiction and others.

31.     The injunction provision set forth in Section 10.6 of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge and the Exculpation and by extension the compromise and settlement upon which the Plan is founded, and is narrowly tailored to achieve this purpose.

32.     Article IX of the Plan appropriately provides that in accordance with section 1123(b) of the Bankruptcy Code, the Trustee of the Trust will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and any other actions specifically enumerated in the Schedule of Causes of Action.  The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

33.     The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates as described in Section 10.2 of the Plan (the "**Lien Release**") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

(xi)    Modification of Rights—Section 1123(b)(5).

34.     The Plan modifies the rights of Holders of Claims or Interests, as applicable, in various Classes as permitted by section 1123(b)(5) of the Bankruptcy Code.

(xii)   Additional Plan Provisions—Section 1123(b)(6).

35.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Holders of Claims and Interests, (b) resolution of disputed Claims, (c) allowance of certain Claims, and (d) retention of Court jurisdiction, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.  The failure to address any provisions of the Bankruptcy Code specifically in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

(xiii)   Cure of Defaults—Section 1123(d).

36.     Section 8.3 of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts or Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**N.     Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

37.     The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

> a.   is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;
>
> b.   has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and
>
> c.   complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Package and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**O.     Plan Proposed in Good Faith—Section 1129(a)(3).**

38.     The Debtors have negotiated, developed, and proposed the Plan (including the Plan Supplement, and all other documents and agreements necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In so determining, the Bankruptcy Court has considered the facts and record of the Chapter 11 Cases, the Disclosure Statement, and evidence proffered, admitted, or adduced at the Confirmation Hearing, and examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the

14

Plan, and the process leading to Confirmation. The Debtors' Chapter 11 Cases were filed, and the

Plan was proposed, with the legitimate purpose of allowing the Debtors to liquidate their assets

including the sale of their businesses. The Plan (including all documents necessary to effectuate the

Plan) and the Plan Supplement were negotiated in good faith and at arm's length among the Debtors

and their key stakeholders. Additionally, the compromises and settlements embodied in the Plan

(including all documents necessary to effectuate the Plan), this Order and the Plan Supplement reflects

the best possible compromise and settlement that could be reached given the facts and circumstances

surrounding the Debtors and these Chapter 11 Cases. Further, the Plan's classification,

indemnification, exculpation, and injunction provisions have been negotiated in good faith and at

arm's length, are consistent with the Bankruptcy Code, and are each integral to the Plan, and necessary

for the implementation of the Plan.

**P.     Payment for Services or Costs and Expenses—Section 1129(a)(4).**

39.     The Debtors have satisfied section 1129(a)(4) of the Bankruptcy Code. Any payment

made or to be made by the Debtors for services or for costs and expenses of the Debtors'

professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to

the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court

as reasonable. All such costs and expenses of the Debtors' professionals shall be paid in accordance

with the Plan.

**Q.     Directors, Officers, and Insiders—Section 1129(a)(5).**

40.     The Debtors have complied with the requirements of section 1129(a)(5) of the

Bankruptcy Code. The Debtors have disclosed the identity and affiliations of the individuals proposed

to serve as the initial directors and officers of KCM and the Reorganized Debtor. The proposed

directors and officers for KCM and the Reorganized Debtor are qualified, and the appointment to

such offices of the proposed directors and officers is consistent with the interests of the Holders of Claims and Interests and with public policy.

**R.      No Rate Changes—Section 1129(a)(6).**

41.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**S.      Best Interest of Creditors—Section 1129(a)(7).**

42.      The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached to the Disclosure Statement as **Exhibit F** and the other evidence related thereto in support of the Plan that was proffered, admitted, or adduced at or prior to the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest against a Debtor either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if such Debtors were liquidated under chapter 7 of the Bankruptcy Code as of the Effective Date.

**T.      Acceptance by Certain Classes—Section 1129(a)(8).**

43.      The Unimpaired Classes are Unimpaired by the Plan and, accordingly, Holders of Claims in such Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  As to each Debtor, of the Voting Classes are Impaired each has voted to accept the Plan, except for Class 7, as established by the Voting Declaration.

44.      The Deemed Rejecting Classes are Impaired and deemed to reject the Plan, pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.

Holders of Claims in the Deemed Rejecting Classes will not receive or retain any property on account of their Claims or Interests. Additionally, the Unimpaired or Impaired Classes are not entitled to vote to accept or reject the Plan. Therefore, the Plan does not satisfy the requirements of section 1129(a)(8), with respect to the Deemed Rejecting Classes, Class 7, and the Unimpaired or Impaired Classes (to the extent such Classes are Impaired under the Plan). Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and, with respect to the Deemed Rejecting Classes, Class 7, and the Unimpaired or Impaired Classes (to the extent such Classes are Impaired under the Plan), 1129(b) of the Bankruptcy Code.

**U.    Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

45.    The treatment of Allowed General Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Factor Claims and statutory fees imposed by 28 U.S.C. § 1930 under Article I of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**V.    Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

46.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Declaration, Classes 3, 5, 8, 10 and 11 each of which is Impaired, voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**W.    Feasibility—Section 1129(a)(11).**

47.    The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The evidence supporting Confirmation of the Plan proffered, admitted, or adduced by the Debtors at or prior to the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate

methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that

the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the

need for further financial reorganization of the Reorganized Debtors or any successor to the

Reorganized Debtors under the Plan unless the Plan provides for such liquidation which it does; and

(e) establishes that the Reorganized Debtors will have sufficient funds available to meet their

obligations under the Plan. The Court specifically finds that the Plan, in providing for a sale of the

New Equity Interests and the formation of the Trust, is essentially a plan of liquidation.

**X.      Payment of Fees—Section 1129(a)(12).**

48.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

Article III.E of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C.

§ 1930(a).

**Y.      Continuation of Employee Benefits—Section 1129(a)(13).**

49.     The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

The Debtors have no applicable retiree benefits.

**Z.      Non-Applicability of Certain Sections—1129(a)(14), (15), and (16).**

50.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not

apply to the Chapter 11 Cases.

**AA.    "Cram Down" Requirements—Section 1129(b).**

51.     The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

Notwithstanding the fact that Class 7 and certain of the Unimpaired or Impaired Classes have rejected

or may be deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the

Bankruptcy Code.  The evidence in support of the Plan that was proffered, admitted, or adduced at

or prior to the Confirmation Hearing is reasonable, persuasive, credible, and accurate, has not been

controverted by other evidence, and establishes that the Plan satisfies the requirements of section

1129(b) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to such Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Classes will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% on account of its Claim. *Third*, the Plan does not discriminate unfairly with respect to such Classes because similarly situated Holders of Claims and Interests will receive substantially similar treatment on account of their Claims and Interests irrespective of Class. Accordingly, the Plan satisfies the requirement of section 1129(b)(1) and (2) of the Bankruptcy Code. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**BB.    Only One Plan—Section 1129(c).**

52.      The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed with respect to each Debtor in each of the Chapter 11 Cases.

**CC.    Principal Purpose of the Plan—Section 1129(d).**

53.      The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**DD.    Not Small Business Cases—Section 1129(e).**

54.      The Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**EE.    Good Faith Solicitation—Section 1125(e).**

55.      Based on the record before the Bankruptcy Court in these Chapter 11 Cases, including evidence proffered, admitted, or adduced at or prior to the Confirmation Hearing, the Debtors and

the Plan Proponents (i) have acted in "good faith" within the meaning of section 1125(e) of the

Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy

Rules, the Local Rules, the Voting Procedures, and any applicable nonbankruptcy law, rule, or

regulation governing the adequacy of disclosure in connection with the development of the Plan, all

their respective activities relating to the solicitation of acceptances to the Plan and their participation

in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have

participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code

in the offer and issuance of any securities under the Plan, and therefore are not, and on account of

such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable

law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer

and issuance of the securities under the Plan, and are entitled to the protections afforded by

section 1125(e) of the Bankruptcy Code and the Exculpation set forth in Section 10.7 of the Plan.

**FF.    Satisfaction of Confirmation Requirements.**

56.    Based upon the foregoing, all other pleadings, documents, exhibits, statements,

declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and

arguments made, proffered, admitted, or adduced at the Confirmation Hearing, the Plan satisfies the

requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**GG.    Implementation.**

57.    The terms of the Plan, including the Plan Supplement, and all documents, forms, lists,

schedules, addendums, and agreements contemplated under the Plan (including, but not limited to the

Plan and the Plan Supplement) (collectively, the "**<u>Plan Documents</u>**") are incorporated by reference

and constitute essential elements of the Plan and this Confirmation Order.  Consummation of each

such Plan Document is in the best interests of the Debtors, the Debtors' Estates, and Holders of

Claims and Interests, and such Plan Documents are hereby approved.  The Debtors have exercised

reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents have been negotiated in good faith, at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

**HH.   Binding and Enforceable.**

58.     The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan.  The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**II.   Issuance of New Equity Interests.**

59.     Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution under the Plan of the New Equity Interests, whether on the Effective Date or any other date of a distribution thereafter, pursuant to the terms of the Plan and/or in accordance with this Confirmation Order, comply with section 1145 of the Bankruptcy Code and shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities.  The issuances of the New Equity Interests was, are, or were in exchange for the Plan Payment.

21

60.    In addition, under section 1145 of the Bankruptcy Code, any securities issued or distributed as contemplated by the Plan, including the New Equity Interests, shall be freely tradable by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

**JJ.    Executory Contracts and Unexpired Leases.**

61.    The Debtors have exercised sound business judgment in determining whether to assume or reject each of their Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, and Article VIII of the Plan.  Each assumption of an Executory Contract or Unexpired Lease pursuant to Article VIII of the Plan, including any amendments to each such Executory Contract or Unexpired Lease, shall be legal, valid, and binding upon the Debtors or Reorganized Debtor and their successors and assigns and all non-Debtor parties and their successors and assigns to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order.  The Debtors or the Reorganized Debtor, as applicable, have cured, or provided adequate assurance that the Debtors, the Reorganized Debtor, or their successors and assigns, as applicable, will cure defaults (if any) under or relating to each of the Executory Contracts and Unexpired Leases that are being assumed by the Debtors pursuant to the Plan.

62.     The Debtors gave notice of the proposed cure amounts to each non-Debtor counterparty to an Executory Contract or Unexpired Lease that the Debtors seek to assume under the Plan.  The Assumed Executory Contract and Unexpired Lease List was good, sufficient, and appropriate under the circumstances, and no further notice need be given to any party in respect of establishing a Cure Claim for the respective Executory Contract or Unexpired Lease.  Non-Debtor counterparties to the applicable Executory Contracts and Unexpired Leases have had a sufficient, reasonable, and appropriate opportunity to object to the proposed cure amounts.

**KK.     Good Faith.**

63.     The Debtors and the Plan Proponents acted in good faith and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan; and (b) take the actions authorized and directed by this Confirmation Order.

64.     The consideration to be provided by the Plan Funder pursuant to Plan: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the New Equity Interests; and (iii) constitutes reasonably equivalent value and fair consideration for the New Equity Interests under the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any similar applicable laws of the United States or any state or territory. The Plan Funder's involvement in the Plan was proposed, negotiated, and agreed upon by and amongst the Debtors and the Plan Funder without collusion or fraud, in good faith, and at arm's length. The Plan Funder is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to the full protection of that provision with respect to the Plan.

**LL.**     **Retention of Jurisdiction.**

65.     The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, the Chapter 11 Cases, including the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

**IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.     **Findings of Fact and Conclusions of Law**.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.     **Confirmation of the Plan**.  The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including, without limitation, the Plan Documents, are hereby authorized and approved.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

3.     **Objections**.  All objections to Confirmation of the Plan and other responses, comments, statements, or reservation of rights, if any, in opposition to the Plan that have not been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order are overruled on the merits.

4.     **Plan Classification Controlling.**  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classification set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

5.     **Confirmation Hearing Notice**.  The Confirmation Hearing Notice complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

6.     **Solicitation**.  The solicitation of votes on the Plan complied with the Voting Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and applicable nonbankruptcy law.

7.     **Plan Modifications**.  The modifications, amendments, and supplements made to the Solicited Plan following the solicitation of votes thereon constitute technical changes and do not materially adversely affect or change the proposed treatment of any Claims or Interests.  After giving effect to such modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Accordingly, such modifications do not require additional disclosure or re-solicitation of votes under sections 1125, 1126, or 1127 of the Bankruptcy Code or Bankruptcy Rule 3019, nor do they require that the Holders of Claims in the Voting Classes be afforded an opportunity

to change their previously cast votes on the Solicited Plan. The Holders of Claims in the Voting Classes who voted to accept the solicitation version of the Solicited Plan are deemed to accept the Plan as modified. The Plan, as modified, is, therefore, properly before this Court and all votes cast with respect to the Solicited Plan prior to such modification shall be binding and shall apply with respect to the Plan.

8. **No Action Required.** No action of the respective directors, equity holders, managers, or members of the Debtors or the Reorganized Debtors is required to authorize the Debtors or the Reorganized Debtor, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the other Plan Documents.

9. **Binding Effect**. On the date of and after entry of this Confirmation Order, subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(d), 6004(h), or otherwise, the terms of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective (and/or adopted, where applicable) and enforceable and deemed binding upon the Debtors, the Reorganized Debtor, and any and all Holders of Claims or Interests and such Holder's respective successors and assigns (regardless of whether or not (a) the Holders of such Claims or Interests voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the Holders of such Claims or Interests are entitled to a distribution under the Plan), all Entities that are parties to or are subject to the discharges, exculpations, and injunctions provided for in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, all owners of Interests in any Debtor, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan. The Plan and the Plan

Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

10.     **Only One Plan.** The Plan is a joint plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon substantive consolidation of any of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

11.     **Vesting of Assets in the Reorganized Debtors.** Except as otherwise provided in the Plan, Confirmation of the Plan shall cause all property of the Corporate Debtors other than the Trust Assets to vest in the Reorganized OOS, free and clear of all Liens, claims and encumbrances except for those Liens created pursuant to the Plan or otherwise preserved as provided in the treatment of creditors under this Plan, and shall cause all Exempt Property and all nonexempt property of the Mahones to vest in the Mahones, free and clear of all Liens, claims and encumbrances except for those Liens created pursuant to the Plan or otherwise preserved as provided in the treatment of creditors under this Plan. Except as otherwise provided in the Plan, this Confirmation Order, or any agreement, instrument, or other document incorporated herein, on and after the Effective Date, each of KCM and the Reorganized Debtor may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

12.     **Effectiveness of All Actions**. All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this

Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

13.    **Plan Implementation**.

(a)    In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law and limited liability company law of any applicable jurisdiction (collectively, the "**Reorganization Effectuation Statutes**"), without further action by the Court or the equity holders, members, managers, officers, or directors of any of the Debtors or Reorganized Debtor, the Debtors and the Reorganized Debtor, as well as the managers and officers of the Debtors or Reorganized Debtor are authorized to:   (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, the Plan Supplement, the Plan Documents, this Confirmation Order, and the transactions contemplated thereby or hereby, and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan, the Plan Supplement, and the Plan Documents.

(b)    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan, the Plan Supplement, and the Plan Documents including, (i) the rejection or assumption, as appropriate, of any Executory Contracts and Unexpired Leases, (ii) issuances and distributions of the New Equity Interests, and (iii) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan shall be effective prior to, on, or after the Effective Date pursuant to this Confirmation Order, without further notice, application to, or order of this Court, or further action by the respective managers, officers, directors, members, or equity holders of the Debtors or Reorganized Debtor.

(c)    To the extent that, under applicable nonbankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the equity holders, members, managers, or directors of any of the Debtors or Reorganized Debtor, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, managers, members, and equity holders of the appropriate Debtors or Reorganized Debtor, as applicable.

(d)    All such transactions effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Confirmation Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

14.    **Cancellation of Existing Securities and Agreements**.    Except as otherwise provided in the Plan, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing any Claims against any of the Debtors, and any Interests in the Debtors and KCM shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other Person and the obligations of the Debtors or Reorganized Debtor, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the counterparties to any such documents or agreements shall be released from all duties thereunder; *provided* that notwithstanding Confirmation or Consummation, any such document or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (a) allowing Holders to receive distributions under the Plan; (b) allowing creditors to enforce their rights, Claims, and interests vis-à-vis any parties other than the Debtors; and (c) preserving any rights of any creditors to enforce any obligations owed to each of

them under the Plan, and to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy

Court or any other court, including, but not limited, to enforce the respective obligations owed to

such parties under the Plan.

15.    **Exemption from Transfer Taxes**.  Pursuant to, and to the fullest extent permitted

by, section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to, in contemplation

of, or in connection with, the Plan, including: (a) the Trust Agreement; (b) the issuance, reinstatement,

distribution, transfer, or exchange of any debt, security, or other interest in the Debtors or the

Reorganized Debtor or KCM, including the issuance of the New Equity Interests, (c) the transfer, if

any, of the Debtors' assets to the Reorganized Debtor or KCM; (e) the making, assignment, recording,

or surrender of any lease or sublease; (d) the creation, modification, consolidation, termination,

refinancing, delivery, and/or recording of any mortgage, deed of trust, or other security interest, or

the securing of additional indebtedness by such other means, and (e) the making, delivery, or recording

of any other instrument or transfer order, in furtherance of, or in connection with the Plan, including

any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of

assets or transaction arising out of, contemplated under, or in any way related to the Plan, shall not be

subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage

tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the

Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the

collection of any such tax or governmental assessment and accept for filing and recordation any of

the foregoing instruments or other documents pursuant to such transfers or property without the

payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers

(or any other Person with authority over any of the foregoing), wherever located and by whomever

appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego

the collection of any such tax or governmental assessment, and shall accept for filing and recordation

any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

16.     **Exemption from Registration Requirements**.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable nonbankruptcy law, the offering, issuance, and distribution under the Plan of the New Equity Interests, and to the extent they constitute securities under the Securities Act, whether on the Effective Date or any other date of distribution thereafter, pursuant to the terms of the Plan or the Confirmation Order, shall be exempt from registration and prospectus delivery requirements under (a) the Securities Act and all rules and regulations promulgated thereunder and (b) any applicable U.S. state or local law requiring registration for the offer, issuance, or distribution of securities.

17.     Pursuant to section 1145 of the Bankruptcy Code, any issuance of securities contemplated by the Plan, including the New Equity Interests, shall be freely tradable by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (b) the restrictions, if any, on the transferability of such securities or instruments, including, any restrictions on the transferability under the terms of the New Organizational Documents; and (c) any other applicable regulatory approval.

18.     **Preservation of Causes of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX of the Plan, the Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action belonging to the Debtors or their Estates that are transferred and assigned to the Trust pursuant to the Plan, as applicable, whether arising before or after the Petition Date, including any actions specifically enumerated in the

31

Schedule of Causes of Action, and the Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than Causes of Action released by the Debtors pursuant to the exculpations set forth in Article X of the Plan or otherwise under the Plan.

19.     The Trustee may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Trust Beneficiaries. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Causes of Action to any Cause of Action against it as any indication that the Trustee will not pursue any and all available Causes of Action of the Debtors or the Estates against it. The Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan or this Confirmation Order. Unless any Cause of Action of the Debtors or the Estates against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Trustee expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.  The Trust shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters pertaining to the Claims reconciliation process and the Trust Assets, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Trustee to file motions or substitutions of parties or counsel in each such matter.

20.     **Release of Liens.**  Except as otherwise provided in the Plan, all property dealt with by the Plan, including the New Equity Interests, shall be free and clear of all claims, liens and interests

32

of any party as of the Effective Date. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan. The Reorganized Debtor is authorized to execute any document or make any filing necessary to further document the release of any lien, security interest or similar encumbrance.

21.    **Issuance of New Equity Interests**.  On the Effective Date, all equity interests in the Corporate Debtors shall be cancelled, and no holder of an equity interest in the Corporate Debtors shall receive any distribution on account of such prepetition equity interests under this Plan. 100% of the New Equity Interests in the Reorganized OOS and KCM will be issued to the Mahones in exchange for Plan Funder funding the Plan Payment in the total amount of $750,000 as defined in section 2.61 of the Plan. The assets acquired by the Mahones via purchase of the New Equity Interests shall include all assets necessary or related to the businesses including cash, receivables, equipment, vehicles, office equipment, software and intellectual property. On the Effective Date, the Debtors shall be authorized to and shall issue the New Equity Interests in accordance with the terms of the Plan and without the need for any further corporate or shareholder action.  All of the New Equity Interests when so issued, shall be duly authorized, validly issued, enforceable, and fully paid and non-assessable.

22.    **Good Faith**. The Plan Funder is approved as a good faith purchaser under section 363(m) of the Bankruptcy Code and the Plan Funder shall be entitled to all protections of section 363(m) of the Bankruptcy Code.

23.    **Compromise and Settlement of Claims, Interests, and Controversies**.  Pursuant to section 1123(b)(3)(a) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual,

legal, and subordination rights that a creditor or an Interest Holder may have with respect to any Allowed Claim or Interest or any distribution to be made on account of such Allowed Claim or Interest. The entry of this Confirmation Order constitutes approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding that such compromise or settlement was negotiated at arms'-length and in good faith, is in the best interests of the Debtors, their Estates, and Holders of such Claims and Interests, and is fair, equitable, and reasonable.

24.    **Release, Exculpation, Discharge, and Injunction Provisions**. All discharge, injunction, and exculpation provisions set forth in the Plan are approved and shall be effective and binding on all persons and entities to the extent provided therein.

25.    **Discharge of Claims and Termination of Interests**. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such

debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The entry of the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

26.     **Payment of Statutory Fees**.  All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code that are due and payable by Debtors will be paid by the Debtors on the Effective Date.

27.     All such fees due and payable after the Effective Date shall be paid by the Reorganized Debtor to the extent a Debtor's Chapter 11 Case remains open for purposes other than with respect to administering the Trust Assets and shall be paid by the Trust to the extent such Debtor's Chapter 11 Case remains open for purposes of administering the Trust Assets. The Trustee shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the Chapter 11 Cases are converted, dismissed, or closed.  The Bankruptcy Court retains jurisdiction to consider and address any concerns raised by any Trust Beneficiary as to the reasonableness of the fees and expenses disclosed therein.

28.     **Documents, Mortgages and Instruments**.  Each federal, state, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages or instruments necessary or appropriate to effectuate, implement or consummate the Plan.

29.     **Return of Deposits**.  All utilities, including any Person who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "**Deposits**"), are directed to return such Deposits to the Reorganized Debtor within 15 days following the Effective Date.  Additionally, the Debtors or

Reorganized Debtors, as applicable, are hereby authorized to close adequate assurance accounts, if

any, upon entry of the Confirmation Order.

30.    **Post-Petition Factoring Claims.** The following language is added to Article III. C

of the Plan:

Through the Plan, OOS has assumed the Post-Petition Factoring agreement between the Post-Petition Factor and OOS. On the Effective Date, OOS shall assign all of the rights and obligations of OOS under the Post-Petition Factoring agreement to the Reorganized Debtor. From and after the Effective Date all obligations of OOS under the Post-Petition Factoring agreement, shall be assumed and discharged by the Reorganized Debtor (regardless of when such obligations arose under the Post-Petition Factoring agreement). The Post-Petition Factoring agreement shall remain in full force and effect except as expressly modified under the Plan. Notwithstanding anything in this Plan to the contrary, all rights and remedies of the Post-Petition Factor under the Post-Petition Factoring agreement, including all liens and security interests of the Post-Petition Factor, shall control in the event of a default by OOS or the Reorganized Debtor under the Post-Petition Factoring agreement or OOS or the Reorganized Debtor shall otherwise fail to comply with the terms under this Plan or any other provision of the Post-Petition Factoring agreement after the Effective Date, after any notice and cure period, if any, as set forth in the Post-Petition Factoring agreement. Notwithstanding anything in the Plan to the contrary, nothing under the Plan shall release, modify, or otherwise affect the liability under the Post-Petition Factor agreement of any non-Debtor borrower/guarantor/obligor.

Furthermore, the security interest and liens allowed, described in, or granted to the Post-Petition Factor under the Post-Petition Factoring agreement, Plan and Order Confirming Plan shall constitute valid and duly perfected security interests and liens and both the Order Confirming Plan and the Plan shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests and liens upon the collateral described in the Post-Petition Factoring agreement, and the Post-Petition Factor shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens.

Additionally, non-debtor KCM has also agreed to continue factoring accounts receivable with the Post-Petition Factor after the Petition Date. Nothing in the Plan or the Confirmation Order shall serve in any way to revise, amend, release or discharge the obligations of KCM to the Post-Petition Factor under any agreement between the Post-Petition Factor and KCM, both before and after the Effective Date. On the Effective Date, KCM shall assign all of the rights and obligations of KCM under its factoring agreement with the Post-Petition Factor to the Reorganized KCM (being non-debtor KCM after issuance of the New Equity Interests). From and after the Effective Date all obligations of KCM under its factoring agreement with the Post-Petition Factor, shall be assumed and discharged by the Reorganized KCM (regardless of when such obligations arose under the agreements between KCM and the Post-Petition Factor). All agreements between KCM and the Post-Petition Factor shall remain in

full force and effect and are not modified in any way herein. Notwithstanding anything in this Plan to the contrary, all rights and remedies of the Post-Petition Factor under the agreements it has with KCM, including all liens and security interests of the Post-Petition Factor, shall control in the event of a default by KCM or the Reorganized KCM under the agreements between KCM and the Post-Petition Factor, or in the event KCM or the Reorganized KCM shall otherwise fail to comply with the terms under this Plan or any other provision of the agreements between KCM and the Post-Petition Factor after the Effective Date, after any notice and cure period, if any, as set forth in such agreements. Notwithstanding anything in the Plan to the contrary, nothing under the Plan shall release, modify, or otherwise affect the liability under the agreements between the Post-Petition Factor and KCM or any non-Debtor borrower/guarantor/obligor.

In addition, the Post-Petition Factor Claims owed to the Post-Petition Factor by OOS, as well as certain debts and claims owed to the Post-Petition Factor by the non-debtor, KCM, are guaranteed by the Mahones pursuant to those certain Guaranty of Individual agreements signed by the Mahones, which are attached to Claim No. 35 in the Mahones' Case (collectively the "Guaranties"). The Mahones, jointly and severally, hereby agree that (a) the Guaranties will remain in full force and effect during the Chapter 11 Plan term or until the Post-Petition Factor Claims are paid in full (or in the case of the debts and claims owed by KCM to the Post-Petition Factor (the "KCM Claims"), the KCM Claims are paid in full), (b) that each guarantor will only be released from their respective guaranty only upon the completion of the payment of all Post-Petition Factor Claims and termination of the Post-Petition Factoring (or in the case of the KCM Claims, the completion of all payments of the KCM Claims under the factoring agreement between the Post-Petition Factor and KCM and the termination of the same by the parties to such agreement, which factoring agreement is attached to Claim No. 35 in the Mahones' Case, and (c) none of the Post-Petition Factor Claims against the Mahones under their Guaranties shall be discharged, satisfied or released or otherwise affected in whole or in part, and each of the Post-Petition Factor Claims against the Mahones under the Guaranties shall remain outstanding.

OOS and the Mahones acknowledge and agree that they are receiving a substantial benefit from their agreements made hereunder, in that the Post-Petition Factor has made these agreements a condition of the Post-Petition Factor continuing to purchase accounts receivable of OOS and KCM under their respective factoring agreements going forward, which is how both OOS and KCM finance their continued operations. Without these agreements from the Mahones and OOS, the Post-Petition Factor would terminate the Post-Petition Factoring and any factoring of KCM.

31.     **Simmons Bank.** Section 4.6(b) of Article IV.B is deleted and replaced with the

following language:

(b)     *Treatment.* All loan documents attached to the SIMMONS BANK Proof of Claim (as filed in the Oryx bankruptcy (*Claim 69-1*) and Mahones Bankruptcy (*Claim 15-1*) (collectively, the "SIMMONS BANK Secured Claim"), including all loan documents executed in connection therewith, whether referenced in the SIMMONS BANK Proof of Claim or not, including guarantees, are collectively referred to herein as the "SIMMONS BANK Loan

Documents." The Allowed SIMMONS BANK Secured Claim ($779,068.48) which includes amounts under SIMMONS BANK's Proof of Claim plus all post-petition interest, fees, costs, and reasonable and necessary legal fees/costs in connection therewith all of which shall be deemed allowed by confirmation order of this Plan without necessity of SIMMONS BANK to obtain separate Court approval (collectively "Allowed SIMMONS BANK Secured Claim"). SIMMONS BANK shall be fully secured on all collateral described/referenced in the SIMMONS BANK Loan Documents, including the real property owned by the Mahones located in Cooke County, Texas ("Mahone Cooke County Property") (collectively the "SIMMONS BANK Collateral") up to the Allowed SIMMONS BANK Secured Claim.

The Allowed SIMMONS BANK Secured Claim shall accrue interest at the rate of 8.5% from the Confirmation Date until paid in full. Beginning AUGUST 1, 2025, and continuing on the first (1st) day of each succeeding month thereafter through and including NOVEMBER 1, 2025, OOS and the Mahones and shall pay SIMMONS BANK $2,500.00 per month to be applied to the Allowed SIMMONS BANK Secured Claim. The Mahones, via the listing broker, shall provide SIMMONS BANK (*via email to stephen.miracle@simmonsbank.com*) a written status report on the marketing of the Mahone Cooke County Property on or before the 20th day of each month beginning JULY 20, 2025. OOS and the Mahones shall pay the Allowed SIMMONS BANK Secured Claim in full on or before DECEMBER 1, 2025, via the sale or refinance of the Mahone Cooke County Property, or otherwise.

The SIMMONS BANK Loan Documents shall remain in full force and effect except as expressly modified under this Plan. Notwithstanding anything in this Plan to the contrary, all rights and remedies of SIMMONS BANK under the SIMMONS BANK Loan Documents shall control in the event of a default by OOS or the Mahones in connection with failure to make a payment to SIMMONS BANK or otherwise fail to comply with the terms under this Plan or failure of OOS or the Mahones to comply with any other provision of the SIMMONS BANK Loan Documents, including, but not limited to, rights of acceleration (*without the necessity to obtain relief from stay*), all rights of foreclosure of the SIMMONS BANK Collateral, and all reasonable and necessary legal fees/costs incurred by SIMMONS BANK in connection with enforcing its rights and remedies under this Plan and/or the SIMMONS BANK Loan Documents, except that in the event of default SIMMONS BANK shall provide a written notice to cure via email to mmahone@oryx-us.com, providing OOS and the Mahones five business days to cure. Notwithstanding anything in this Plan to the contrary, nothing under this Plan shall release, modify, or otherwise affect the liability under the SIMMONS BANK Loan Documents of any non-Debtor borrower/guarantor/obligor.

The security interest and liens allowed, described in, or granted to SIMMONS BANK under the Plan and Order Confirming Plan shall constitute valid and duly perfected security interests and liens and both the Order Confirming Plan and the Plan shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests and liens upon the SIMMONS BANK Collateral. SIMMONS BANK shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens.

SIMMONS BANK shall be entitled to any necessary and reasonable legal fees and costs incurred by SIMMONS BANK to enforce its rights after Confirmation and prior to payoff of the without further order of this Court.

32.  **Other Secured Tax Claims of Texas Taxing Authorities.** The following language

is added to Section 4.3 of Article IV.B of the Plan:

(d)    Notwithstanding any other provision of the Plan or this Confirmation Order, any allowed Other Secured Claims of the Texas Taxing Entities[13] (the "Texas Taxing Entity Claims"), if any, shall be classified in Class 3 – Secured Tax Claims.  The Texas Taxing Entities shall be entitled to accrued interest, if any, to the extent permitted under sections 506 and 511 of the Bankruptcy Code and all parties' rights with respect to any such claims for interest (including any claims for accrued pre- or postpetition interest) are reserved in accordance with the paragraphs below.  Failure of the Debtors to satisfy the Texas Taxing Entity Claims in accordance with the treatment afforded Class 3 – Secured Tax Claims shall constitute a plan default and all parties' rights with respect to any such defaults are preserved, and the Texas Taxing Entities shall be entitled to pursue non-bankruptcy collection without further notice to or order of this Court.

The Texas Taxing Entities shall retain their valid liens to the extent that the Texas Taxing Entities are entitled to such liens, against the applicable property of the Debtors until such time as they are paid in full. The Texas Taxing Entity Claims shall be paid in full in accordance with the provisions of Sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, as the case may be, by payment in full by the Reorganized Debtor in equal monthly installments commencing the first day of the month following entry of the Confirmation Order and concluding on or before the fifth anniversary of the Petition Date , with interest on the Texas Taxing Entity Claims at the applicable Texas statutory rate of interest from the Petition Date through the date of payment in accordance with Sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. Any tax liabilities to the Texas Taxing Entities incurred by the Debtor after the Petition Date shall be paid by the Debtors in the ordinary course of business, subject to applicable non-bankruptcy laws including penalty and interest, when due without further notice to of order of this Court. Nothing in the Plan or this Confirmation Order shall be deemed as an admission as to the validity of any lien or claim asserted by the Texas Taxing Entities, including any claim for pre- or postpetition interest, all parties' rights with respect to such claims being reserved.

In the event that collateral that secures the Claim of one or more of the Texas Taxing Entities is returned to a creditor that is junior to the Texas Taxing Entities, the Debtors shall first pay all ad valorem property taxes that are secured by the collateral. In the event that the Debtors abandon any property securing the Texas Taxing Entity Claims, the Debtors shall provide

---

13   Texas Taxing Entities means all Texas ad valorem taxing entities represented by the firms of Perdue Brandon Fielder Collins & Mott LLP and Linebarger Goggan Blair & Sampson LLP, including but not limited to the following:  Cooke County, Gainesville Hospital District, North Central Texas College, Valley View ISD, City of Grapevine, Grapevine-Colleyville ISD, Mitchell County, City of Colorado City, Colorado City ISD, Kermit ISD, Dallas County, Tarrant County, Goliad County and Winkler County.

notice of such abandonment and of the occurrence of the Effective Date to the affected Texas Taxing Entities.

*FN 2*: Texas Taxing Authorities means all Texas ad valorem taxing entities represented by the firms of Perdue Brandon Fielder Collins & Mott LLP and Linebarger Goggan Blair & Sampson LLP, including but not limited to the following:  Cooke County, Gainesville Hospital District, North Central Texas College, Valley View ISD, City of Grapevine, Grapevine-Colleyville ISD, Mitchell County, City of Colorado City, Colorado City ISD, Kermit ISD, Dallas County, Tarrant County, Goliad County and Winkler County.

33.    **Secured Claims of Origin Bank.** Section 4.5(b) is deleted and replaced with the

following language:

(b)    *Treatment*. Origin Bank ("Origin") shall have an Allowed Claim secured on all of Debtors' and Reorganized Debtors' (aka and to include Reorganized OOS, and collectively referred to as "Debtors" in this Section 4.5 for Class 5 treatment) furniture, fixtures and equipment that is described in Origin's Proof of Claim, underlying loan documents, and financing statements (collectively, the "Origin Collateral") in the total amount of $1,500,000.00 as of July 1, 2025 (the "Origin Secured Claim"), when interest shall begin accruing interest at the rate of prime plus 2%.

Debtors shall make the following payments to Origin:

a.   $200,000.00 quarterly on the 1st day of every calendar quarter (1st day of January, April, July, and October) beginning on October 1, 2025; and

b.   Remaining unpaid balance shall be due and paid in full on or before July 1, 2027.

There shall be no prepayment penalty.

Debtors are authorized to sell Origin Collateral equipment conditioned upon Debtors providing to Origin (1) 2 days advanced written notice of any sale; (2) verifiable written documentation reflecting the specific equipment sold, sale price, buyer's name and contact information, and total funds received; and (3) after satisfaction of any secured tax liabilities payment of all sale proceeds to Origin for application to the Origin Claim, which shall not apply toward Debtors' quarterly payments to Origin.

Origin subordinates its lien position on post-Petition Date accounts receivable and purchase-money debt on new equipment that satisfies the perfection requirements of the UCC.

The terms of the Origin pre-Petition Date loan documents are not modified unless specifically stated herein, and the Debtors and Reorganized Debtors are obligated thereunder, such that the Origin pre-Petition Date loan documents are enforceable against the Debtors except as specifically stated herein.  The existing pre-Petition Date

40

loan documents may be replaced, modified or supplemented within the discretion of Origin by documents with terms consistent with the existing notes, security agreements and this Plan, and Debtors shall execute any such documents as requested by Origin. Notwithstanding any provision in the Plan stating otherwise (including without limitation Section 12.16), the provisions of the pre-Petition Date loan agreements, as specifically modified by this Class 5 section of the Plan, shall govern all default rights and remedies of Origin.

Debtors shall provide Origin sworn quarterly financials including income statements, cash flow statements, balance sheets, accounts receivable aging report, accounts payable aging report, and a list of current owned equipment (with location), all with details satisfactory to Origin. Debtors shall provide Origin and its agents access to all of Debtors' business premises at any reasonable time and upon reasonable notice to the Debtors for the purpose of performing an inventory, appraisal, or inspection of the Origin Collateral and Debtors' books and records.

Debtors shall remain current on all insurance policy premiums and shall provide proof of insurance within ten (10) days of written request by Origin.

The security interest and liens allowed, described in, or granted to Origin under the Plan and Order Confirming Plan shall constitute valid and duly perfected security interests and liens and both the Order Confirming Plan and the Plan shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests and liens upon the Collateral granted to Origin hereunder. Origin shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens. If Origin shall, in its discretion, elect for any reason to file any such financing statements, mortgages, notices or other documents with respect to such security interests and liens, or take any other action to evidence or perfect same, the Debtors are authorized and shall execute, or cause to be executed, all such financing statements, deeds of trust, notices or other documents upon Origin's request.

Debtors represent and warrant to Origin that Debtors do not have any claims against Origin or offsets, defenses or counterclaims to the terms of the Origin loan documents or Origin Secured Claim. Nevertheless, to the extent any determination or assertion is hereafter made that Debtors have any such claims, offsets, defenses or counterclaims, Debtors waive and release Origin, its predecessors, successors and assigns, its parents, subsidiaries and affiliates, agents, counsel, trustees, servicers, beneficiaries, certificate holders of Origin, and the officers, directors, members, shareholders, partners, employees, attorneys and agents of each of the foregoing from any and all such claims, offsets, defenses and counterclaims, such waiver and release being with full knowledge and understanding of the circumstances and effects of such waiver and release and after having consulted counsel with respect thereto. Debtors further waive notice of disposition pursuant to § 9.611 of the Texas Business and Commerce Code (waived pursuant to § 9.624(a)), any defense based on commercial reasonableness of a sale of the Origin Collateral.

41

Notwithstanding any provision in the Plan to the contrary, the Origin Secured Claim shall not be subject to any objections, costs, expenses, offsets, recoupment, avoidance, subrogation, surcharges, or 11 U.S.C. § 506(c) charges.

Origin shall have a bifurcated Class 11 unsecured Allowed Claim against Corporate Debtors and the Mahones in the amount of $13,255,987.42.

34.    **Priority Tax Claims.** Article III.B of the Plan is deleted and replaced with the following language:

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or the Reorganized Debtor, as applicable, agree to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive treatment in accordance with the provisions of Sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, as the case may be, their pro rata share of regular installment payments in the amount of $25,000 per quarter  paid by the Reorganized Debtor to the Creditors' Trust ("Quarterly Tax Payments") for distribution on a pro rata basis to holders of Allowed Priority Tax Claims and   Class 2 Allowed Secured Claim of the Internal Revenue Service, commencing the first day of the first calendar quarter following entry of the Confirmation Order and concluding on or before the fifth anniversary of the Petition Date (the "**Installment Period**"), with interest on such Allowed Priority Tax Claims after the Effective Date in accordance with Sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. Any outstanding balance of each Allowed Priority Tax Claim shall be paid in full in a lump sum payment prior to the sixtieth (60th) month following the Petition Date (the "**Balloon Payments**"). Such Balloon Payments shall be paid from the Creditors' Trust's share of the Net Recoveries. Payments shall be credited first to the trust fund portion of any Allowed Priority Tax Claim.

35.    **Secured Claim of the Internal Revenue Service.** Section 4.2(b) of Article IV.B of the Plan is deleted and replace with the following language:

(b)    *Treatment.* Except to the extent that a Holder of an Allowed Secured Claim of the Internal Revenue Services and the Debtors or the Reorganized Debtor, as applicable, agree to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Claim of the Internal Revenue Services, each Holder of an Allowed Secured Claim of the Internal Revenue Services shall receive treatment in accordance with the provisions of Sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, as the case may be, their pro rata share of the Quarterly Tax Payments commencing the first day of the first calendar quarter following entry of the Confirmation Order and concluding on or before the fifth anniversary of the Petition Date (the "**Installment Period**"), with interest on such Allowed Priority Tax Claims after the Effective Date in accordance with Sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. Any outstanding balance of each Allowed Priority Tax Claim shall be paid in full in a lump sum payment prior to the sixtieth (60th) month following the Petition Date (the "**Balloon Payments**"). Such Balloon Payments shall be paid from the Creditors' Trust's share of the Net Recoveries.

Payments shall be credited first to the trust fund portion of any Allowed Priority Tax Claim.

36.     **Default Provision for Payment of Tax Claims.** Section 10.9 of the Plan is deleted and replaced with the following language which is applicable to all taxing authorities holding Allowed Priority Tax Claims or Secured Tax Claims of the Internal Revenue Service:

(1)     Notwithstanding any other provision in the Plan, if the Reorganized Debtor fails to pay when due any payment required to be made on Allowed Priority Tax Claims or Secured Tax Claims of the Internal Revenue Service under the terms and provisions of this Plan, the Confirmation Order, or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the respective taxing authority shall be entitled to give the Reorganized Debtor and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply:

(A)     The administrative collection powers and the rights of the applicable taxing authority shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and collection as provided under the Internal Revenue Code or other applicable statutes;

(B)     The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or in the Confirmation Order shall, with regard to the applicable taxing authority only, lift or terminate without further notice or hearing by the Court; and

(C)     The applicable taxing authority shall have the right to proceed to collect from the Reorganized Debtor any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(2)     If the taxing authority declares the Reorganized Debtor to be in default of the Reorganized Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Reorganized Debtor, and/or any successor in interest. Failure of a taxing authority to declare a failure and/or default does not constitute a waiver by the taxing authority of the right to declare that the Reorganized Debtor is in default.

(3)     If full payment is not made within fourteen (14) days of such demand, then the taxing authority may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code or other applicable statutes. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(4)    The taxing authority shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor or the Reorganized Debtor. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor or the Reorganized Debtor to the extent they are not Debtors.

37.    **Enterprise.** With respect to Enterprise FM Trust and Enterprise Fleet Management, Inc., the Reorganized Debtor will assume the Master Equity Lease Agreement (the "**Enterprise Lease Agreement**") and agree to the buyout of the vehicles under the Enterprise Lease Agreement as set forth below:

(a)    Reorganized Debtor shall have returned fourteen (14) vehicles to Enterprise within fourteen (14) days following entry of the Confirmation Order;

(b)    Enterprise shall sell those vehicles and apply the net sale proceeds (after payment of any RBVs on those vehicles) as a credit towards the outstanding balance;

(c)    For avoidance of doubt, the 14 vehicles include the vehicles recently returned to Enterprise, such that twenty-five (25) vehicles will remain in use by Reorganized Debtor, subject to the terms of this agreement.

(d)    The Reorganized Debtor shall pay Enterprise $200,000 within fourteen (14) days of the Effective Date of the Plan.

(e)    The Reorganized Debtor shall pay Enterprise the balance due on any outstanding accounts receivable and any remaining RBVs on the vehicles under the Enterprise Lease Agreement on the **later of:** (i) twenty-eight (28) days after the Effective Date of the Plan, or (ii) fourteen (14) days after receiving a full accounting of the balance due under the Enterprise Lease Agreement, including application of the net sale proceeds from the 14 returned vehicles.

(f)      If Reorganized Debtor defaults in any of the conditions above, after a five (5) day cure period running from written notice of any default (which may be by e-mail to mmahone@oryx-us.com), Enterprise shall have: (i) immediate relief from the automatic stay to repossess any remaining vehicles under the Enterprise Lease Agreement and exercise all remedies thereunder if the Reorganized Debtor has not emerged from chapter 11 as of the default, and (ii) the right to immediately repossess all vehicles under the Enterprise Lease Agreement and exercise all remedies thereunder if the Reorganized Debtor has emerged from chapter 11 as of the default.

38.      **Committee.** The Allowed Professional Fee Claims of the professionals employed by the Committee shall be paid from the Plan Payment. $100,000 of the Plan Payment shall be paid to the Trust to be used to pay expenses of the Trust.

39.      **Other Plan Modifications.**

Section 1.2(b) of Article I is deleted and replaced with the following language:

(b)      **Cancellation of Old Equity and Issuance of New Equity Interests:** The Plan provides that, on the Effective Date, all equity interests in the Corporate Debtors shall be cancelled, and no holder of an equity interest in the Corporate Debtors shall receive any distribution on account of such prepetition equity interests under this Plan. 100% of the New Equity Interests in the Reorganized OOS and KCM will be issued to the Mahones in exchange for Plan Funder funding the Plan Payment in the total amount of $750,000. The assets acquired by the Mahones via purchase of the New Equity Interests shall include all assets necessary or related to the businesses including cash, receivables, equipment, vehicles, office equipment, software and intellectual property.

Section 2.59 of Article II is deleted and replaced with the following language:

2.59      **Plan Funder** means the person or entity who makes the Plan Payment. The Plan contemplates that Wesley Mahone and Brenda Mahone, as the highest bidder for the New Equity Interests will be the Plan Funder.

Section 2.61 of Article II is deleted and replaced with the following language:

2.61      **Plan Payment** means the payment made by the Plan Funder to acquire the New Equity Interests and fund the Plan, which payment consists of $500,000.00 paid to the Debtors' Estates, together with a separate allocated payment of $250,000.00

paid to of the Corporate Debtors' Counsel as a partial payment on their Allowed Claims. The Plan Payment shall be deposited into the trust account of the Corporate Debtors' counsel – the Law Offices of Frank J. Wright, PLLC – who is authorized to directly pay, in accordance with the Plan, all Allowed Claims of Estate Professionals, all Administrative Expense Claims Allowed as of the Effective Date, and all U.S. Trustee fees. Corporate Debtors' counsel is further authorized to disburse the Trust Payment to the Trust.

Section 2.62 of Article II is deleted and replaced with the following language:

    2.62    **Plan Proponents** means the Corporate Debtors, the Mahones, and the Plan Funder.

Section 2.77 of Article II is deleted and replaced with the following language:

    2.77    **Trust** means the trust which shall be created on the Effective Date for the benefit of the Holders of Allowed Claims to receive the Trust Payment, control of the Causes of Action, including the Net Recoveries. The name of the Trust shall be the "**Oryx Creditors' Trust**."

Section 2.80 of Article II is deleted and replaced with the following language:

    2.80    **Trust Payment** means the remainder of the Plan Payment after payment of all Allowed Claims of Estate Professionals, all Administrative Expense Claims Allowed as of the Effective Date, and all U.S. Trustee fees. The Trust Payment will include a minimum payment of $100,000 for Trust expenses.

Section 5.1 of Article V is deleted and replaced with the following language:

    5.1    **Reorganized OOS and KCM.** Upon the Effective Date of the Plan, all of the existing stock of the Debtors will be canceled. The Reorganized OOS and KCM will issue the New Equity Interests, which shall represent all of the issued and outstanding equity of the Reorganized OOS and KCM, to the Mahones. The assets acquired by the New Owner via purchase of the New Equity Interests shall include all assets necessary or related to the businesses including cash, receivables, equipment, vehicles, office equipment, software and intellectual property.

Section 5.2 of Article V is deleted and replaced with the following language:

    5.2    **Source of Plan Payments.** On or before the Effective Date, the Plan Funder, shall fund the Plan Payment as set forth in the Plan. In addition to the Plan Payment, the Individual Debtors will sell the Homestead Excess Acreage to pay the trust fund portion of the Allowed Priority and/or Secured Tax Claim of the Internal Revenue Service. The sale will be accomplished either in a single transaction or through the development and sale of lots.

Section 5.9 of Article V is deleted and replaced with the following language:

5.9 **Retention of the Debtors' Property.** On the Effective Date, unless otherwise noted herein, all property of the Corporate Debtors other than the Trust Assets shall vest in the Reorganized OOS, free and clear of all Liens, claims and encumbrances except for those Liens created pursuant to the Plan or otherwise preserved as provided in the treatment of creditors under this Plan. On the Effective Date, unless otherwise noted herein, all Exempt Property and all nonexempt property of the Mahones shall vest in the Mahones, free and clear of all Liens, claims and encumbrances except for those Liens created pursuant to the Plan or otherwise preserved as provided in the treatment of creditors under this Plan.

Section 7.2 of Article VII is deleted and replaced with the following language:

7.2 **Officers and Directors.** The officers of the Reorganized Debtors will be selected by the Mahones.

Section 10.1 of Article X is deleted and replaced with the following language:

10.1 **Vesting of Property.** Except as otherwise provided in the Plan, Confirmation of the Plan shall cause all property of the Corporate Debtors other than the Trust Assets to vest in the Reorganized OOS, free and clear of all Liens, claims and encumbrances except for those Liens created pursuant to the Plan or otherwise preserved as provided in the treatment of creditors under this Plan, and shall cause. all Exempt Property and all nonexempt property of the Mahones to vest in the Mahones, free and clear of all Liens, claims and encumbrances except for those Liens created pursuant to the Plan or otherwise preserved as provided in the treatment of creditors under this Plan.

Section 10.2 of Article X is deleted and replaced with the following language:

10.2 **Property Free and Clear.** Except as otherwise provided in the Plan, all property dealt with by the Plan, including the New Equity Interests, shall be free and clear of all claims, liens and interests of any party as of the Effective Date. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

Section 10.7 of Article X is deleted and replaced with the following language:

10.7 **Exculpation.** The Committee and the Plan Proponents and their professionals shall, on and after the Confirmation Date, not be liable for any Cause of Action arising in connection with or out of the administration of this Chapter 11 Case, the formulation, negotiation or implementation of this Plan, the good faith solicitation of acceptances of this Plan in accordance with Bankruptcy Code §1125(e), pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or Cause of Action against the Committee or the Plan Proponents or professionals employed by the Committee or the Plan Proponents

47

for which such persons have been exculpated from liability pursuant to the preceding sentence.

40.      **Professional Fee Claims**. All final requests for compensation or reimbursement of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Effective Date (other than substantial contribution claims under section 503(b)(4) of the Bankruptcy Code), must be Filed and served on the Reorganized Debtor and their counsel no later than forty-five (45) days after the Effective Date or as may otherwise be directed by the Bankruptcy Court. All such final requests will be subject to approval by the Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be paid as soon as reasonably practicable solely from the Professional Fee Escrow Account up to the full Allowed amount.

41.      **Bar Date for Rejection Damages Claims.**  Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases as a result of or pursuant to the Plan or the Confirmation Order (a "**Rejection Damages Claim**"), if any, must be Filed within thirty (30) days after the later of: (a) the Effective Date; and (b) the date of such rejection as established by a Final Order or pursuant to the Plan if later than the Effective Date (such date, the "**Rejection Damages Claims Bar Date**"). ALL REJECTION DAMAGES CLAIM NOT FILED BY THE REJECTION DAMAGES CLAIMS BAR DATE WILL BE AUTOMATICALLY DISALLOWED, FOREVER BARRED FROM ASSERTION, AND SHALL NOT BE ENFORCEABLE AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, THE GUC TRUST, OR THEIR PROPERTY WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTORS OR THE REORGANIZED DEBTORS OR FURTHER NOTICE TO, OR ACTION, ORDER, OR APPROVAL OF THE COURT OR ANY OTHER ENTITY, AND ALL SUCH REJECTION

DAMAGES CLAIMS SHALL BE DEEMED FULLY SATISFIED, RELEASED, AND
DISCHARGED, NOTWITHSTANDING ANYTHING IN THE SCHEDULES OR A PROOF
OF CLAIM TO THE CONTRARY. All Rejection Damages Claims that become Allowed Claims
shall be classified as GUC Claims and shall be treated in accordance with the Plan, unless a different
security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article
VII of the Plan.

42.    **Filing and Recording**.  This Confirmation Order is binding upon and shall govern
the acts of all persons or entities including all filing agents, filing officers, title agents, title companies,
recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental
departments, secretaries of state, federal, state, and local officials, and all other persons and entities
who may be required, by operation of law, the duties of their office, or contract, to accept, file, register,
or otherwise record or release any document or instrument.  Each and every federal, state, and local
government agency is hereby directed to accept any and all documents and instruments necessary,
useful, or appropriate (including financing statements under the applicable uniform commercial code)
to effectuate, implement, and consummate the transactions contemplated by the Plan and this
Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

43.    **Continued Effect of Stays and Injunctions**.  Unless otherwise provided in the Plan
or this Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11
Cases under section 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation
Date, shall remain in full force and effect until the later of the Effective Date and the date indicated
in the order providing for such injunction or stay.

44.    **Debtors' Actions Post-Confirmation Through the Effective Date**.  During the
period from entry of this Confirmation Order through and until the Effective Date, each of the
Debtors shall continue to operate its business as a debtor in possession, subject to the oversight of

49

the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Court that is in full force and effect.

45. **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan at any time after entry of this Confirmation Order.

46. **Nonseverability of Plan Provisions Upon Confirmation**.  Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.

47. **Post-Confirmation Modifications**.  Subject to the limitations contained in the Plan, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights, to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Section 12.2 of the Plan.

48. **Reversal/Stay/Modification/Vacatur of Confirmation Order**.  Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors

or the Reorganized Debtor, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

49. **Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

50. **Governmental Approvals Not Required**. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the implementation or consummation of the Plan, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

51. **Notice of Entry of the Confirmation Order and Effective Date**. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and notice of the Effective Date, to all parties who hold a Claim or Interest in these Chapter 11 Cases, the U.S. Trustee, and other parties in interest. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of confirmation of the Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

52. **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

53.    **References to Particular Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order.

54.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

55.    **Effect of Conflict**.  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

56.    **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

57.    **Waiver of Stay.**  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived. This Order shall take effect immediately and shall not be stayed pursuant to the Bankruptcy Code, Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062, or otherwise.

58.    **Retention of Jurisdiction**.  Except as set forth in the Plan or this Confirmation Order, the Court may properly, and, upon the Effective Date, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

**IT IS SO ORDERED**.

Signed on 07/22/2025

_Brenda T. Rhoades_ SD

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

**LAW OFFICES OF FRANK J. WRIGHT, PLLC**

By:   _/s/ Frank J. Wright_
         Frank J. Wright
         Texas Bar No. 22028800
         Jeffery M. Veteto
         Texas Bar No. 24098548

1800 Valley View Lane, Suite 250
Farmers Branch, Texas 75234
Telephone: (214) 935-9100
Email: frank@fjwright.law
         jeff@fjwright.law
**COUNSEL FOR ORYX OILFIELD
SERVICES, LLC, ORYX OILFIELD
HOLDINGS, LLC, KODIAK EXCAVATION
AND UTILITIES, LLC, AND KODIAK
TRENCHING AND BORING, LLC**


**SPECTOR & COX, PLLC**

By:   _/s/ Sarah M. Cox_
         Sarah M. Cox
         Texas Bar No. 24119316

12770 Coit Road, Suite 850
Dallas, Texas 75251
Telephone: (214) 310-1321
Email:  sarah@spectorcox.com
**COUNSEL FOR MATTHEW JOE
MAHONE AND LEIGH ANN MAHONE**

**TITTLE LAW FIRM, PLLC**

By:  /s/ Brandon J. Tittle
       Brandon J. Tittle
       Texas Bar No. 24090436

1125 Legacy Drive, Suite 230
Frisco, Texas 75034
Telephone: (972) 213-2316
Email:  btittle@tittlelawgroup.com
**COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS**

**BAKER LOPEZ**

By:  /s/ Cliff A. Wade
       Cliff A. Wade
       Texas Bar No. 24013699

5728 LBJ Freeway, Suite 150
Dallas, Texas 75240
Telephone: (469) 206-9384
Email:  cliff.wade@bakerlopez.com
**COUNSEL FOR ORIGIN BANK**

**SETTLEPOU**

By:  /s/ Michael P. Menton
       Michael P. Menton
       Texas Bar No. 24046427

3333 Lee Parkway, Eighth Floor
Dallas, Texas 75219
Telephone: (214) 520-3300
Email:  mmenton@settlepou.com
**COUNSEL FOR SIMMONS BANK**

**LINEBARGER GOGGAN BLAIR
& SAMPSON, LLP**

By:  */s/ John K. Turner*
        John K. Turner
        Texas Bar No. 00788563

3500 Maple Avenue, Suite 800
Dallas, Texas 75219
Telephone: (214) 880-0089
Direct: (469) 221-5125
Facsimile: (469) 221-5003
Email:  John.turner@lgbs.com
**COUNSEL FOR GOLIAD COUNTY,
TARRANT COUNTY, DALLAS COUNTY,
AND WINKLER COUNTY**


**PERDUE, BRANDON, FIELDER, COLLINS
 & MOTT, L.L.P.**

By:  */s/ Mollie Lerew*
        Mollie Lerew
        State Bar No: 24086631

P.O. Box 8188
Wichita Falls, Texas 76307
Telephone: (940) 723-4323
Email:  mlerew@pbfcm.com
**COUNSEL FOR COOKE COUNTY, GAINESVILLE
HOSPITAL DISTRICT, NORTH CENTRAL TEXAS
COLLEGE, VALLEY VIEW ISD, CITY OF
GRAPEVINE, GRAPEVINE-COLLEYVILLE ISD,
MITCHELL COUNTY, CITY OF COLORADO CITY,
COLORADO CITY ISD, AND KERMIT ISD**

**MULLIN HOARD & BROWN, LLP**

By:   */s/ M. Andrew Stewart*
      M. Andrew Stewart
      Texas Bar No. 24037554

P.O. Box 2585
Lubbock, Texas 79408
Telephone: (806) 765-7491
Email:  astewart@mhba.com
**COUNSEL FOR DIVERSIFIED LENDERS, INC.**


**FOLEY & LARDNER LLP**

By:   */s/ Geoffrey S. Goodman*
      Geoffrey S. Goodman
      IL Bar No. 6272297
      Mark C. Moore
      Texas Bar No. 24074751

2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Email:  mmoore@foley.com
      ggoodman@foley.com
**COUNSEL FOR ENTERPRISE FM TRUST AND
ENTERPRISE FLEET MANAGEMENT, INC.**


**NOWAK & STAUCH, PLLC**

By:   */s/ Thomas R. Stauch*
      Thomas R. Stauch
      State Bar No. 00794687

10000 N Central Expressway, Suite 1040
Dallas, Texas 75231
Telephone: (214) 272-0169
Email:  tstauch@ns-law.net
**COUNSEL FOR WESLEY MAHONE
AND BRENDA MAHONE**

**<u>Exhibit A</u>**

**Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re | § | **CASE NO. 24-41618** |
| **ORYX OILFIELD SERVICES, LLC,** | § | |
| | § | Chapter 11 |
| Debtors[1]. | § | |
| _____ | § | Jointly Administered |
| In re | § | |
| | § | **CASE NO. 24-42337** |
| **MATTHEW JOE MAHONE AND LEIGH ANN MAHONE,** | § | |
| | § | Chapter 11 |
| **Debtors** | § | |

---

## SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS

### (Dated May 19, 2025)

---

[1]  The Debtors in these proceedings (including the last four digits of their respective taxpayer identification numbers) are: Oryx Oilfield Services, LLC (2839), Oryx Oilfield Holdings, LLC (5964), Kodiak Excavation and Utilities, LLC (5663), Kodiak Trenching and Boring, LLC (5045), and Matthew Joe Mahone and Leigh Ann Mahone. The Debtors are all headquartered and operated from and/or reside at 4000 N. White Chapel Blvd., Southlake, Texas 76092.

EXHIBIT "A"

Frank J. Wright
Texas Bar No. 22028800
Jeffery M. Veteto
Texas Bar No. 24098548
**LAW OFFICES OF FRANK J. WRIGHT, PLLC**
1800 Valley View Lane, Suite 250
Farmers Branch, Texas 75234
Telephone: (214) 935-9100
Email: frank@fjwright.law
        jeff@fjwright.law

**COUNSEL FOR ORYX OILFIELD SERVICES, LLC, ORYX OILFIELD HOLDINGS, LLC, KODIAK EXCAVATION AND UTILITIES, LLC, AND KODIAK TRENCHING AND BORING, LLC**

Sarah M. Cox
Texas Bar No. 24119316
**SPECTOR & COX, PLLC**
12770 Coit Road, Ste. 850
Dallas, TX 75251
Telephone: (214) 310-1321
Email: sarah@spectorcox.com

**COUNSEL FOR MATTHEW JOE MAHONE AND LEIGH ANN MAHONE**

# ARTICLE I

# INTRODUCTION

Oryx Oilfield Services, LLC ("**OOS**"), Oryx Oilfield Holdings, LLC ("**OOH**"), Kodiak Excavation and Utilities, LLC ("**KEU**"), and Kodiak Trenching and Boring, LLC ("**KTB**") (collectively, the "Corporate **Debtors**") and Matthew Joe Mahone and Leigh Ann Mahone (the "**Mahones**" or "**Individual Debtors**" and collectively with the Corporate Debtors, the "**Debtors**") propose this Second Amended Joint Plan of Reorganization (the "**Plan**") for the resolution of the outstanding Claims against, and Interest in, the Debtors. Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in Article II.A of the Plan. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

1.1     **Background of the Debtors.** Debtor OOS is engaged in the business of performing, assisting with, and consulting in connection with new construction, repairs, and maintenance on oil and gas related well sites, production facilities, saltwater disposal facilities, midstream or downstream facilities, amine facilities, hydration facilities, storage facilities, compressor stations, metering stations, gathering stations, pipelines, flow lines, gathering lines, trunk lines, and other plants or facilities related to treating processing, storing, or transferring of oil or gas for customers throughout the State of Texas and in other partes of the southwestern part of the United States. Debtors OOH, KEU, and KTB were previously engaged in related oil and gas business activities. OOH, KEU, and KTB are no longer operational but do have various assets including Causes of Action. Debtors Mahones own the Corporate Debtors and are personally liable on some of the obligations of the Corporate Debtors.

The Corporate Debtors commenced these Chapter 11 Cases by respectively filing voluntary petitions on July 12, 2024, under Chapter 11 of the Bankruptcy Code. The Mahones filed a voluntary petition on October 1, 2024. The Debtors have remained debtors-in-possession through the pendency of the Chapter 11 Cases.

The Debtors are owned either directly or indirectly by the Mahones. The Mahones are the funder of the Plan Payment (subject to higher bids) and are committing to the sale of the excess acreage associated with their homestead for the payment of tax claims of the Internal Revenue Service.

1.2     **Summary of the Plan.** The Plan is a comprehensive proposal by the Debtors to maximize recoverable value for the Estate and reorganize Debtor OOS' going-concern business. In general, the Plan provides as follows:

(a)     **Continuation of Business:** The Plan provides for the continuation of the business of OOS along with non-debtor Kodiak Capital Management, LLC ("**KCM**"), owned by the Mahones, which has been serving as a subcontractor for OOS in order to complete jobs and acquire new business. Upon confirmation of the Plan, the Reorganized OOS and KCM will be well-positioned to take the actions necessary to continue the business and focus on future growth.

(b)     **Cancellation of Old Equity and Issuance of New Equity Interests:** The Plan provides that, on the Effective Date, all equity interests in the Corporate Debtors shall be cancelled, and no holder of an equity interest in the Corporate Debtors shall receive any distribution on account of such prepetition equity interests under this Plan. 100% of the New Equity Interests in the Reorganized OOS and KCM will be issued to Purchaser in exchange for its funding of the Plan Payment in the total amount of $500,000. The assets acquired by the Purchaser via purchase of the New Equity Interests shall include all assets necessary or related to the businesses including cash, receivables, equipment, vehicles, office equipment, software and intellectual property.

(d)     **Formation of the Creditors' Trust:** The Plan provides for the formation of the Creditors' Trust. The Trust will be funded for the purpose of pursuing certain legal actions for the benefit of all creditors and liquidating any non-business assets of the Corporate Debtors. The Trust shall distribute the Net Recoveries from the Causes of Action as follows:

i.      first dollars to pay Allowed Priority Tax Claims;

ii.     second dollars to pay Allowed Other Priority Claims;

iii.    third dollars to pay Allowed Secured Claims of Internal Revenue Service;

iv.     fourth dollars to pay Allowed Secured Claims of Origin Bank, N.A.;

v.      fifth dollars to pay Allowed Secured Claims of Simmons Bank;

vi.     sixth dollars to pay Allowed Secured Claims of John Deere Construction & Forestry Company;

vii.    seventh dollars to pay Allowed Other Secured Claims; and

viii.   eighth dollars to pay Allowed Unsecured Claims.

## ARTICLE II

## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

## A.  DEFINED TERMS

2.1  **Administrative Claim** means an administrative expense under §503(b) of the Bankruptcy Code, including Fee Claims, whenever incurred and irrespective of whether any payment or transfer has been made on behalf of such administrative expense, including the fees payable to the United States Trustee under 28 U.S.C. §1930.

2.2  **Allowed Amount** means the amount in lawful currency of the United States of any Allowed Claim, or the number of shares representing any Allowed Interest.

2.3  **Allowed Claim and Allowed Interest** means with reference to any Claim or Interest: (i) a Claim against or Interest in the Debtors, proof of which, if required, was filed on or before the Bar Date, which is not a Contested Claim or Contested Interest, (ii) if no proof of claim or interest was so filed, a Claim against or Interest in the Debtors that has been or hereafter is listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent, or (iii) a Claim or Interest allowed hereunder or by Final Order. An Allowed Claim or Allowed Interest does not include any Claim or Interest or portion thereof which is a Disallowed Claim or Disallowed Interest or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order. Unless otherwise specifically provided in this Plan, an Allowed Claim or Allowed Interest shall not include any amount for punitive damages or penalties.

2.4  **Avoidance Actions** means any claim or Cause of Action belonging to the Debtors and arising under the Bankruptcy Code including, but not limited to, §§544, 547, 548 and 550 or otherwise applicable state law.

2.5  **Bankruptcy Code** means Title 11 of the United States Code, as amended.

2.6  **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Plano Division.

2.7  **Bar Date** means the deadline by which a Claim must have been timely filed. The general Bar Date for the Corporate Debtors' Case was November 12, 2024, as to Creditors with prepetition Claims and was January 8, 2025, for governmental units. The general Bar Date for the Mahones' Case was January 29, 2025, as to Creditors with prepetition Claims and is March 31, 2025, for governmental units.

2.8  **Business Day** means any day, other than a Saturday, Sunday, or legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

2.9  **Case(s)** or **Chapter 11 Case(s)** means the above entitled and numbered jointly administered and substantively consolidated cases filed by the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code or any single case of a Debtor.

2.10  **Causes of Action** means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, and Claim, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including (a)

Avoidance Actions; (b) those claims involved in those civil actions identified in the Debtor's Schedules or Disclosure Statement; (c) other damages (general, exemplary, or both) relating to or based on (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, or (v) causes of action based on alter ego or other liability theories; (vi) based on any other claim of the Debtor, to the extent not specifically compromised or released pursuant to the Plan or an agreement referred to, or incorporated into, the Plan or Final Order entered after notice and opportunity for hearing; (d) claims under any prepetition insurance policy of the Debtor; (e) claims against the officers and directors of the Debtor including any claims under any directors and officers insurance policies; (e) any claims of the Debtor for equitable subordination under § 510(c) or under other applicable laws; (f) any claim of the Debtor to recharacterize one or more Claims as Interests; (g) any Avoidance Actions; and (h) any unresolved objection to any Disputed Claim. A list of filed or known Causes of Action shall be filed as a supplement to this Plan no later than seven (7) calendar days before the hearing on confirmation of this Plan.

2.11    **Claim** means: (i) a right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.12    **Claimant** means a holder of a Claim.

2.13    **Class** means all of the holders of Claims against or Interests with respect to the Debtors that have been designated as a class in this Plan.

2.14    **Committee** means the Official Committee of Unsecured Creditors appointed in the lead case of the Chapter 11 Cases.

2.15    **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

2.16    **Confirmation Date** means the date of entry by the Court of the order confirming the Plan.

2.17    **Confirmation Hearing** means the hearing or hearings to be held before the Bankruptcy Court in which the Plan Proponents shall seek Confirmation of this Plan.

2.18    **Confirmation Order** means the Final Order confirming this Plan.

2.19    **Consummation** shall mean the instant upon which the Trust has been formed, the Trust Agreement (inclusive of the Post-Confirmation Vendor Escrow) has been executed, and the Avoidance Actions have been transferred to the Trust, all payments required to be made on the Effective Date have been made, and the new stock of the Debtor has been issued to the Purchasers, at which time this Plan shall be deemed fully consummated and on which date this Plan shall be fully effective. Consummation shall occur on or promptly following the Effective Date.

2.20    **Contested** when used with respect to a Claim or Interest, means a Claim against or Interest in the Debtors that is: (i) listed in the Debtor's Schedules as disputed, contingent, or unliquidated and as to which a proof of claim has been timely filed; (ii) listed in the Debtors' Schedules

as undisputed, liquidated, and not contingent and as to which a proof of Claim or Interest has been filed with the Bankruptcy Court, to the extent the proof of Claim or Interest amount exceeds the amount provided for in the Debtors' Schedules; or (iii) the subject of an objection which has been or may be timely filed by any party in interest or the US Trustee and which claim has not been disallowed by Final Order. To the extent an objection relates to the allowance of only a part of a Claim or Interest, such a Claim or Interest shall be a Contested Claim or Contested Interest only to the extent of the objection.

2.21   **Corporate Debtors** means Oryx Oilfield Services, LLC, Oryx Oilfield Holdings, LLC, Kodiak Excavation and Utilities, LLC, and Kodiak Trenching and Boring, LLC.

2.22   **Creditor** means holder of a Claim as of the Petition Date.

2.23   **Cure** mean all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract (or such lesser amount as may be agreed by the parties to an Executory Contract) assumed by the Debtors or the Reorganized Debtor pursuant to §§365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to §365(b)(2) of the Bankruptcy Code.

2.24   **Debtors** means the Corporate Debtors and the Mahones.

2.25   **Deficiency Claims** means an Allowed Claim of a Creditor, equal to the amount by which the aggregate Allowed Claims of such Creditor exceed the sum of (a) any set off rights of the Creditor permitted under §553 of the Code, plus (b) the Secured Claim of such Creditor; provided, however, that if the holder of a Secured Claim or the Class of which such Claim is a member makes the election provided in §1111(b)(2) of the Code, there shall be no Deficiency Claim in respect of such Claim.

2.26   **Disallowed Claim or Disallowed Interest** means a Claim against, or Interest in, the Debtor, or any portion thereof, (i) that has been disallowed by Final Order, (ii) proof of which has been untimely filed and as to which no order of allowance has been entered by the Bankruptcy Court, or (iii) listed as disputed, contingent, or unliquidated and as to which no proof of claim or proof of interest has been timely filed.

2.27   **Disclosure Statement** means the Disclosure Statement for this Plan, together with any supplements, amendments, or modifications thereto.

2.28   **Distribution Date** means the date on which distributions are commenced under the Plan.

2.29   **Effective Date** means the date on which (i) the Trust is formed, (ii) the Trust Agreement has been executed, (iii) the Trust Assets have been transferred to the Trust, and if an equitization occurs (iv) the new stock of the Reorganized Debtor and KCM has been issued, which date shall be not later than 30 days after the date that the Confirmation Order becomes a Final Confirmation Order. Notice of the occurrence of the Effective Date shall be filed by the Plan Proponent.

2.30   **Entity(ies)** includes any individual, partnership, limited liability company, corporation, estate, trust, governmental unit, person, and the United States Trustee.

2.31    **Estate** means the respective bankruptcy estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of their Cases.

2.32    **Estimated Claim** means any Contested Claim which is estimated in accordance with §502(c) of the Code. For purposes of distribution, the estimated amount of such Contested Claim shall be deemed the Allowed Amount of such Claim. For the full satisfaction of its Estimated Claim, a Claimant shall have, as its sole and exclusive remedy, the rights to payment provided under this Plan and shall have no other rights or remedies and may not, following Consummation, assert any other right against either of the Debtors, Claimant's Estimated Claim being deemed Allowed and fully satisfied by the Debtor's payment obligations described in this Plan, and any amount in excess thereof being fully released, voided and discharged by the confirmation of this Plan.

2.33    **Excess Equipment** means the equipment and vehicles determined by OOS and KCM not to be necessary to their ongoing operations. The Excess Equipment will be listed on a Schedule of Anticipated Equipment to be Sold and filed prior to Confirmation.

2.34    **Excess Real Property** means any real property owned by any of the Debtors other than the Homestead that is determined by the Debtors not to be necessary to the business operations of OOS and KCM. The Excess Real Property includes the 17 acres owned by the Mahones in Cooke County, Texas.

2.35    **Executory Contract** means a contract or lease to which one or more of the Debtors is a party and that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

2.36    **Executory Contract List** mean the list of Executory Contracts to be filed as a supplement to this Plan no later than seven (7) calendar days before the hearing on confirmation of this Plan.

2.37    **Exempt Property** means all real or personal property of the Mahones that is exempt under the Texas Property Code.

2.38    **Fee Claim** means a Claim for fees and expense reimbursements under Sections 330, 331 or 503(b) of the Bankruptcy Code.

2.39    **Final Confirmation Order** means the Confirmation Order entered by the Bankruptcy Court confirming this Plan provided that such Confirmation Order has not been amended, modified or reversed in such a manner as is unacceptable to the Plan Proponents and provided that (i) no appeal, petition for certiorari, motion for reargument or rehearing shall then be pending or (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, no stay has been granted. In the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought and a stay has been obtained, the Confirmation Order shall become a Final Order after it has been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

2.40    **Final Order** means an order or judgment, entered by the Bankruptcy Court or other court of competent jurisdiction as to which (i) the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending or, (iii) in the event that an appeal,

writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

2.41    **GUC** or **General Unsecured Claims** means Unsecured Claims that are not Priority Claims.

2.42    **Homestead** means the Mahones' lot and house located at 4000 N. White Chapel Blvd, Southlake, Texas, which is exempt under Texas law.

2.43    **Homestead Excess Acreage** means the land that is part of the Homestead that the Mahones determine is not necessary for their personal home and can be sold to pay holders or liens secured by the Homestead.

2.44    **Impaired** means the treatment of an Allowed Claim or Allowed Interest under this Plan unless, with respect to such Claim or Interest, either: (i) this Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Reorganized OOS (A) cures any default that occurred before, on or after the commencement of the Cases other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest.

2.45    **Interests** means the equity interests in the Debtors represented by shares of issued and outstanding common stock, preferred stock or any options, warrants or rights to purchase or acquire such stock.

2.46    **KCM** means Kodiak Capital Management, LLC, a Texas limited liability company owned by the Mahones and serving in part as a subcontractor to OOS.

2.47    **KEU** means Kodiak Excavation and Utilities, LLC

2.48    **KTB** means Kodiak Trenching and Boring, LLC

2.49    **Lien** means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtors' estates which are permitted by, or not avoided pursuant to, the Bankruptcy Code.

2.50    **Mahones** means Matthew Mahone and Leigh Ann Mahone, debtors in Case No. 24-42337 in the United States Bankruptcy Court for the Eastern District of Texas, Plano Division.

2.51    **Net Recoveries** means any proceeds of settlement, litigation or other disposition of the Causes of Action, following payment or reimbursement of all costs incurred in connection with such Causes of Action, which will require (i) litigation financing or other advanced funds by either the Mahones or a third-party; (ii) a contingency fee arrangement with counsel; or (iii) a combination

thereof. All such costs incurred in connection with such Causes of Action, including the fees and expenses of the professionals engaged by the Creditors' Trustee (including the establishment of such reserves as the Creditors' Trustee may deem appropriate), will be paid first.

2.52    **New Equity Interests** means the new membership interests in OOS and KCM.

2.53    **OOH** means Oryx Oilfield Holdings, LLC.

2.54    **OOS** means Oryx Oilfield Services, LLC

2.55    **Other Priority Claims** means and includes all Priority Claims except Administrative Claims, Priority Wage Claims and Priority Tax Claims.

2.56    **Other Secured Claims** means and includes all Secured Claims except Secured Tax Claims.

2.57    **Petition Date** means July 12, 2024, the date the Corporate Debtors commenced their Chapter 11 Cases and October 1, 2024, the date the Mahones commenced their Chapter 11 Case.

2.58    **Plan** means this Plan of Reorganization for the Debtors, as it may be amended or modified from time to time as permitted herein or in accordance with Section 1127 of the Bankruptcy Code.

2.59    **Plan Funder** means the person or entity who makes the Plan Payment. The Plan contemplates that the Mahones will be the Plan Funder subject to any higher bid for the New Equity Interests.

2.60    **Plan Rate** means the rate of interest determined at Confirmation based on the Wall Street Journal prime rate plus one percent.

2.61    **Plan Payment** means the payment made by the Plan Funder to acquire the New Equity Interests and fund the Plan.

2.62    **Plan Proponents** means the Corporate Debtors and the Mahones.

2.63    **Post-Petition Factor** means Diversified Lenders, Inc. or such other factor as the Debtors do business with after Confirmation.

2.64    **Post-Petition Factoring** means the factoring and security agreement entered into by the Debtors with the Post-Petition Factor.

2.65    **Priority Claim** means all Claims entitled to priority under Section 507(a)(2)-(a)(7) and (a)(9) of the Bankruptcy Code.

2.66    **Priority Tax Claim** means all Claims for Taxes entitled to priority under section 507(a)(8) of the Bankruptcy Code and shall include all Tax Claims secured by assets of the Estate.

2.67    **Priority Wage Claim** means all Claims of any individual or corporation entitled to priority under section 507(a)(4) of the Bankruptcy Code.

2.68    **Pro Rata** means, with reference to any distribution on account of an Allowed Claim or Allowed Interest, the proportion that an Allowed Claim or Allowed Interest in a particular Class bears, respectively, to the aggregate amount of all Claims or Interests in such Class, including Contested Claims or Contested Interests which are not Disallowed Claims or Disallowed Interests as of the date of such calculation.

2.69    **Professionals means** any attorney, accountant, forensic accountant or other professional person employed by the Debtors or the Committee.

2.70    **Reorganized Debtor** means OOS as reorganized on the Effective Date under this Plan.

2.71    **Schedules** means those schedules and statements of financial affairs filed by the Debtors under Federal Rule of Bankruptcy Procedure 1007, as same may be amended from time to time.

2.72    **Secured** means an Allowed Claim that is secured by a lien on or security interest in property in which the Estate has an interest, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of a Claimant's interest in the Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

2.73    **Subcontractor Claims** mean any and all Allowed Claims of an Entity for the payment of amounts for which there is a perfected lien against third-party non-debtor assets related to a project or client of the Debtors where either (i) the Reorganized OOS is assuming the related contract; or (ii) the Reorganized OOS is due to collect accounts receivable related thereto. A list of known Subcontractor Claims, with estimated Claim amounts shall be filed as a supplement to this Plan no later than seven (7) calendar days before the hearing on confirmation of this Plan.

2.74    **Subcontractor Lien** means any lien, security interest, other encumbrance that secures a Subcontractor Claim, whether such lien, security interest, or other encumbrance lies against, encumbers, or otherwise burdens the assets of the Debtor, the Debtors' bankruptcy estates, and/or any non-debtor third party related to a project or client of the Debtors where either (i) the Reorganized OOS is assuming the related contract; or (ii) the Reorganized OOS is due to collect accounts receivable related thereto.

2.75    **Taxes** means and includes all federal, state, county and local income, ad valorem, excise, stamp and other taxes of any type or nature whatsoever.

2.76    **Tax Claims** mean any and all Secured or Priority Claims of any Entity for the payment of any Taxes (a) accorded a priority pursuant to §507(a)(8) of the Code, or (b) secured by valid Liens on assets of the Debtor existing on the Confirmation Date. Additionally, all Liens securing Tax Claims shall be deemed and legally treated as released, voided and discharged on the Confirmation Date.

2.77    **Trust** means the trust which shall be created on the Effective Date for the benefit of the Holders of Allowed Claims to receive the Plan Payment, control of the Causes of Action, including the Net Recoveries. The name of the Trust shall be the **"Oryx Creditors' Trust."**

2.78    **Trust Agreement** means the agreement governing the Creditors' Trust, a copy of which will be filed with the Court not less than ten (10) days prior to the Confirmation Hearing.

2.79 **Trust Assets** means (i) the Causes of Action including the Net Recoveries on the Causes of Action; and (ii) the Trust Payment.

2.80 **Trust Payment** mean the remainder of the Plan Payment after payment of all Allowed Claims of Estate Professionals and all U.S. Trustee fees.

2.81 **Trustee** means the trustee appointed to serve as administrator for the Trust pursuant to the Trust Agreement and appointed by the Confirmation Order as trustee, and any successor trustee selected pursuant to the Trust Agreement. The initial Trustee shall be selected jointly by the Debtors and the Committee.

2.82 **Trust Interest** means the beneficial ownership interest in the Trust, entitling the holder to share in the Creditors' Trust Assets.

2.83 **Trust Oversight Committee** means the committee, consisting of two (2) creditors, that will consult with the Trustee regarding the pursuit and/or settlement of the Causes of Action. The initial members of the Trust Oversight Committee shall be selected by the Committee. All members of the Trust Oversight Committee must be Creditors holding Allowed Unsecured Claims who are not defendants in any Causes of Action owned by the Trust. The Trust Oversight Committee shall only exist so long as there are two (2) creditors willing to serve. No compensation to the members of the Trust Oversight Committee shall be paid by the Trustee from the Trust Assets; provided, however, that reasonable expenses of the Trust Oversight Committee may be reimbursed by the Trustee at his discretion. The Trust Oversight Committee shall have standing as a party in interest to enforce the terms and provisions of the Trust Agreement. The Trust Oversight Committee shall have the authority to retain counsel if necessary to resolve a dispute with the Trustee and the reasonable fees and expenses of such counsel shall be a cost of administration of the Trust and any disagreements will be resolved by the Bankruptcy Court.

2.84 **U.S. Trustee** means the Office of the U.S. Trustee for the Eastern District of Texas.

2.85 **Unimpaired** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

2.86 **Unsecured Claim** means a Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

## B.    RULES OF INTERPRETATION

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neutral gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise

specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, or similar formation document or agreement, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (14) any immaterial effectuating provisions may be interpreted by the Debtors or Reorganized Debtor, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

## C.    COMPUTATION OF TIME

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such a transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## D.    GOVERNING LAW

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, leases, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in such documents, in which case the governing law of such agreement shall control); provided that corporate governance matters relating to the Debtors or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor.

## E.    REFERENCES TO MONETARY FIGURES

All references in the Plan to monetary figures shall refer to currency of the United States of America.

**F.     CONFLICTS**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**ARTICLE III**

**ADMINISTRATIVE CLAIMS, PRIORITY TAX
CLAIMS, AND POST-PETITION FACTORING**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Post-Petition Factoring Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.

**A.     ADMINISTRATIVE CLAIMS**

3.1     **Administrative Claims**

(a)     **In General.** Each holder of an Administrative Claim except as otherwise set forth in this Article 3 (and specifically excluding Priority Tax Claims as set forth in Section 3.2 below) shall receive from the Creditors' Trust either: (i) with respect to Administrative Claims which are Allowed Claims on the Effective Date, the amount of such Holder's Allowed Claim in one cash payment; (ii) with respect to Administrative Claims which become Allowed Claims after the Effective Date, the amount of such Holder's Allowed Claim in one cash payment as soon as practicable after such claim becomes an Allowed Administrative Claim; or (iii) such other treatment agreed upon by the Creditors' Trust and such holder; provided, however, that any such Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor shall be paid by the Reorganized OOS in accordance with the terms and conditions of the particular transaction giving rise to such liability and any agreements relating thereto.

(b)     **Professional Fee Applications**. All final requests for compensation or reimbursement of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Effective Date (other than substantial contribution claims under Section 503(b)(4) of the Bankruptcy Code), must be Filed and served on the Reorganized Debtor and its counsel no later than forty-five (45) days after the Effective Date or as may otherwise be directed by the Bankruptcy Court. All such final requests will be subject to approval by the Bankruptcy Court after notice to other parties on the regular service list and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be paid as soon as reasonably practicable from the Plan Payment up to the full Allowed amount.

Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor and their counsel and the requesting Professional or other entity by no later than twenty-one (21) days (or such longer period as may be established by order of the Bankruptcy Court or by agreement of the objecting party, the applicable Professional, and the Reorganized Debtor) after the date on which the applicable

application for compensation or reimbursement was served. Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

3.2 **Other Administrative Claims.** Any other person or Entity who claims to hold any other Administrative Claim (other than an Administrative Claim representing a liability incurred in the ordinary course of business by any of the Debtors) shall be required to file with the Court an application within thirty (30) days after the Confirmation Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely the application as required under this Section 3.2 shall result in the Claim being forever barred and discharged. An Administrative Claim with respect to which an application has been properly filed pursuant to this Section 3.2 and to which no objection has been filed, or an objection has been filed but overruled by the Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order. Notwithstanding the foregoing, governmental units shall not be required to file Administrative Claims and the U.S. Trustee shall not be required to file an Administrative Claim with respect to quarterly fees owed by the Debtors.

## B. PRIORITY TAX CLAIMS

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or the Reorganized Debtor, as applicable, agree to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors or Reorganized Debtor, as the case may be: (a) payment in full of such Allowed Priority Tax Claim on the Distribution Date by the Trust or (b) treatment in accordance with the provisions of Sections 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, as the case may be, by payment in full by the Trust amortized over forty-eight (48) equal monthly installments (the "**Installment Period**"), with interest on such Allowed Priority Tax Claims after the Effective Date in accordance with Sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, beginning on the Effective Date. Any outstanding balance of each Allowed Priority Tax Claim shall be paid in full in a lump sum payment prior to the sixtieth (60th) month following the Petition Date (the "**Balloon Payments**"). Such Balloon Payments shall be paid first from the Creditors' Trust's share of the Net Recoveries. Payments shall be credited first to the trust fund portion of any Allowed Priority Tax Claim.

## C. POST-PETITION FACTOR CLAIMS

All Post-Petition Factor Claims shall be deemed to be Allowed Secured Claims and Allowed superpriority Administrative Claims in the full amount due and owing under the Post-Petition Factoring as of the Effective Date. On the Effective Date, except to the extent that a Holder of an Allowed Post-Petition Factor Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Post-Petition Factor Claim, each Holder thereof shall receive indefeasible payment in full in Cash.

Subject to the provisions of Article IV, Class 4 below, unless and until Holders of Allowed Post-Petition Factor Claims receive indefeasible payment in full in Cash (or such other treatment consented to by such Holder), then notwithstanding entry of the Confirmation Order and anything to the contrary in this Plan or the Confirmation Order, (a) none of the Post-Petition Factor Claims

shall be discharged, satisfied or released or otherwise affected in whole or in part, and each of the Post-Petition Factor Claims shall remain outstanding, (b) none of the Post-Petition Factor's Liens shall be (or deemed to have been) waived, released, satisfied or discharged, in whole or in part, and (c) none of the Post-Petition Factor's factoring agreements shall be (or deemed to have been) terminated, discharged, satisfied or released or otherwise affected in whole or in part, and each such agreement shall remain in effect.

## D.    SUBCONTRACTOR CLAIMS

Except to the extent that a Holder of a Subcontractor Claim agrees to a less favorable treatment of its Allowed Subcontractor Claim, each such Holder of an Allowed Subcontractor Claim, shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Subcontractor Claim, indefeasible payment in full in Cash on the later of (i) the Effective Date; or (ii) such date as any Cause of Action of the Debtors that relates to such Subcontractor Claim is resolved as provided under Section 5.10 of this Plan.

## E.    STATUTORY FEES

On or before the Effective Date, the Debtors shall have paid in full in Cash all fees due and payable pursuant to section 1930 of Title 28 of the United States Code. On and after the Effective Date, the Reorganized Debtor shall timely pay any and all such fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee for each quarter (or portion thereof) that such Debtor's case remains open. Each Debtor or Reorganized Debtor, as the case may be, shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the case of that particular Debtor being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**ARTICLE IV**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

## A.    CLASSIFICATION OF CLAIMS AND INTERESTS

Claims and Interests, except for Administrative Claims, Priority Tax Claims, and Post-Petition Factor Claims, are classified in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code in the Classes set forth in this Article IV. Such Claim or Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. Such Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date. The Debtors reserve the right to assert that the treatment provided to Holders of Claims and Interests pursuant to Article IV.B the Plan renders such Holders Unimpaired.

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor with Claims against and Interests in each respective Debtor participating in the respective Subclass in such Class; *provided, however*, that notwithstanding anything to the contrary herein, Claims and Interests against Debtors that are identified on the Schedule of Converted Cases and being converted to chapter 7 of

the Bankruptcy Code or the Schedule of Non-Reorganized Debtors shall not be subject to this Article IV. Where there are no Subclasses listed, all Claims of such Class are being treated the same.

## B.      TREATMENT OF CLAIMS AND INTERESTS

To the extent that a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the treatment of Allowed Claims and Allowed Interests in such Class is specified below.

### 4.1      Class 1 – Other Priority Claims

(a)      *Classification*: Class 1 consists of Other Priority Claims. For purpose of classification and treatment under the Plan, all Other Priority Claims are being treated as either a Class 1A – Other Priority Claims of Corporate Debtors or Class 1B – Other Priority Claims of Mahones.

(b)      *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

    i.      payment in full in Cash; or

    ii.     other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.B.

(c)      *Voting:* Class 1 is Unimpaired under the Plan. Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

### 4.2      Class 2 – Secured Claims of the Internal Revenue Service

(a)      *Classification*: Class 2 consists of the Secured Claims, if any, of the Internal Revenue Service. For purpose of classification and treatment under the Plan, all Secured Claims of the Internal Revenue Service are being treated as either a Class 2A – Secured Claim of IRS Against the Corporate Debtors or Class 2B – Secured Claim of IRS Against the Mahones.

(b)      *Treatment*: Except to the extent that the Internal Revenue Service agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Claim of the Internal Revenue Service, the Internal Revenue Service shall receive, at the option of the Debtors, either:

    i.      payment in full in Cash by the Trust; or

    ii.     other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.B.

       iii.     all payments shall be credited first to the trust fund portion of any Allowed Secured Claim of the Internal Revenue Service.

(c)    *Voting:* Class 2 is Unimpaired under the Plan. Holders of Claims in Class 2 are entitled to vote to accept or reject the Plan.

### 4.3    <u>Class 3 – Other Secured Tax Claims</u>

(a)    *Classification*: Class 3 consists of the Other Secured Tax Claims. For purpose of classification and treatment of under the Plan, all Other Secured Tax Claims are being treated as one Class.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Tax Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Tax Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

       i.     payment in full in Cash; or

       ii.     other treatment rendering such Claim Unimpaired or otherwise permitted by the Bankruptcy Code and equitable to that described in Article III.B.

(c)    *Voting:* Class 3 is Impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

### 4.4    <u>Class 4 – Secured Post-Petition Factor Claims</u>

(a)    *Classification*: Class 4 consists of the Secured Post-Petition Factor Claims. For purpose of classification and treatment under the Plan, all Secured Post-Petition Factor Claims are being treated as one Class.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed Secured Post-Petition Factor Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Secured Post-Petition Factor Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

       i.     payment in full in Cash;

       ii.     delivery of collateral securing any such Claim and payment of any interest required under Section 506(b) of the Bankruptcy Code; or

       iii.     reinstatement of the Pre-Petition Factor Agreement with a new note bearing a principal amount equal to the amount of the Allowed Class 4 Claims with a term of five years, interest at the Plan Rate, payable monthly in equal payments of principal and interest and secured by the

same collateral that secured the Pre-Petition Factor Agreement pre-petition.

(c)     *Voting:* Class 4 is Impaired under the Plan. Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

**4.5      Class 5 – Secured Claims of Origin Bank, N.A.**

(a)     *Classification:* Class 5 consists of the Secured Claims of Origin Bank. For purpose of classification and treatment under the Plan, all Secured Claims of Origin Bank are being treated as one Class.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Class 5 Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Class 5 Secured Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

  i.      payment in full in Cash;

  ii.     delivery or sale of collateral securing any such Claim and payment of any interest required under Section 506(b) of the Bankruptcy Code;

  iii.    reinstatement of such Claim; or

  iv.     a new note bearing a principal amount equal to the amount of the Allowed Class 5 Claim with a term of sixty (60) equal monthly installments amortized over seventy-two (72) months with interest on such Allowed Class 5 Claims after the Effective Date at the Plan Rate. Any outstanding balance shall be paid in full in a lump sum payment prior to the seventy-second (72nd) month following the Petition Date, with such payment paid fourth from the Creditors' Trust's share of the Net Recoveries.

(c)     *Voting:* Class 5 is Impaired under the Plan. Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

**4.6      Class 6 – Secured Claim of Simmons Bank**

(a)     *Classification:* Class 6 consists of the Secured Claims of Simmons Bank. For purposes of classification and treatment under the Plan, all Secured Claims of Simmons Bank are being treated as one Class.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Class 6 Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Class 6 Secured Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

  i.      payment in full in Cash;

ii.         delivery or sale of collateral securing any such Claim and payment of any interest required under Section 506(b) of the Bankruptcy Code;

iii.       reinstatement of such Claim; or

v.         a new note bearing a principal amount equal to the amount of the Allowed Class 6 Claim with term of sixty (60) equal monthly installments amortized over seventy-two (72) months, with interest on such Allowed Class 6 Claims after the Effective Date at the Plan Rate. Any outstanding balance shall be paid in full in a lump sum payment prior to the seventy-second (72nd) month following the Petition Date, with such payment paid fifth from the Creditors' Trust's share of the Net Recoveries.

(c)    *Voting*: Class 6 is Impaired under the Plan. Holders of Claims in Class 6 are entitled to vote to accept or reject the Plan.

### 4.7   **Class 7 – Secured Claim of John Deere Construction & Forestry Company**

(c)    *Classification*: Class 7 consists of the Secured Claims of John Deere. For purposes of classification and treatment under the Plan, all Secured Claims of John Deere are being treated as one Class.

(d)    *Treatment*: Except to the extent that a Holder of an Allowed Class 7 Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Class 7 Secured Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

i.         payment in full in Cash;

ii.         delivery or sale of collateral securing any such Claim and payment of any interest required under Section 506(b) of the Bankruptcy Code;

iii.       reinstatement of such Claim; or

vi.       a new note bearing a principal amount equal to the amount of the Allowed Class 7 Claim with term of sixty (60) equal monthly installments amortized over seventy-two (72) months, with interest on such Allowed Class 6 Claims after the Effective Date at the Plan Rate. Any outstanding balance shall be paid in full in a lump sum payment prior to the seventy-second (72nd) month following the Petition Date, with such payment paid sixth from the Creditors' Trust's share of the Net Recoveries.

(c)    *Voting*: Class 7 is Impaired under the Plan. Holders of Claims in Class 7 are entitled to vote to accept or reject the Plan.

4.8  **Class 8 Secured Claim of Texas Bank & Trust**

(a)  *Classification*: Class 8 consists of the Secured Claims of Texas Bank & Trust. For purpose of classification and treatment under the Plan, all Secured Claims of Texas Bank & Trust are being treated as Class 8A – Secured Claim of Texas Bank & Trust for the First Mortgage, and Class 8B – Secured Claim of Texas Bank & Trust for the Second Mortgage. Except as otherwise expressly provided herein, all remaining terms of the Notes and Deeds of Trust ("Loan Documents") shall govern the treatment of Creditor's Secured Claims, and the Creditor shall retain its liens until paid in full.

(b)  *Treatment*: Except to the extent that a Holder of an Allowed Class 8 Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Class 8 Secured Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

> i.  Payment pursuant to the terms of the existing Loan Documents.
>
> ii.  Delivery or sale of collateral securing any such Claim and payment of any interest required under Section 506(b) of the Bankruptcy Code.
>
> iii.  Arrears: Arrears shall be cured in equal monthly installments over a period of twenty-four (24) months with interest according to the terms of the Loan Documents. Any objection by Texas Bank & Trust to this cure claim must be filed, served, and actually received by the Debtors in accordance with the disclosure statement order or other applicable final order of the Bankruptcy Court. Any failure to timely object to the proposed assumption or cure claim will be deemed to be consent to the same

(c)  *Voting*: Class 8 is Impaired under the Plan. Holders of Claims in Class 8 are entitled to vote to accept or reject the Plan.

4.9  **Class 9 – Other Secured Claims**

(a)  *Classification*: Class 9 consists of the Other Secured Claims. For purpose of classification and treatment under the Plan, all Other Secured Claims are being treated as one Class.

(b)  *Treatment*: Except to the extent that a Holder of an Other Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claims, each such Holder shall receive, at the option of the applicable Debtor(s), either:

> i.  payment in full in Cash;
>
> ii.  delivery of collateral securing any such Claim and payment of any interest required under Section 506(b) of the Bankruptcy Code;

          iii.        reinstatement of such Claim; or

          vii.      a new note bearing a principal amount equal to the amount of the Allowed Class 9 Claims with term of sixty (60) equal monthly installments amortized over seventy-two (72) months, with interest on such Allowed Class 9 Claims after the Effective Date at the Plan Rate. Any outstanding balance shall be paid in full in a lump sum payment prior to the seventy-second (72nd) month following the Petition Date, with such payment paid eighth from the Creditors' Trust's share of the Net Recoveries.

(c)    *Voting*: Class 9 is Impaired under the Plan. Holders of Claims in Class 9 are entitled to vote to accept or reject the Plan.

### 4.10   Class 10 – Administrative Convenience Claims (Claims of $10,000 or Less)

(a)    *Classification*: Class 10 consists of Allowed Unsecured Claims of $10,000 or less, including all Allowed GUC Claims in excess of $10,000 whose holders elect to reduce to $10,000. For purpose of classification and treatment under the Plan, all Allowed Unsecured Claims of Creditors of the Debtors are being treated as one Class.

(b)    *Treatment*: Allowed Unsecured in Class 10 shall be paid by the Trust 50% of the Allowed Amount of such Claims from the Trust Assets on the later of 90 days after the Effective Date or within 10 days after entry of a Final Order allowing such Claim unless the holder of a Class 10 Claim elects to be treated as a Class 11 Claim.

(c)    *Voting*: Class 10 is Impaired under the Plan. Holders of Claims in Class 10 are entitled to vote to accept or reject the Plan.

### 4.11   Class 11 – General Unsecured Claims.

(a)    *Classification*: Class 11 consists of the GUC Claims. For purpose of classification and treatment under the Plan, there shall be a separate Subclass for each Debtor.

(b)    *Treatment*: Except to the extent that a Holder of a GUC Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed GUC Claims, each such Holder shall receive:

          i.        its Pro Rata share of the Trust, which entitles each General Unsecured Creditor to be paid its Pro Rata share of: (i) Net Recoveries from the Trust Assets, <u>provided however</u>, that no distribution shall be made to any holder of a Class 10 Claim against which the Debtors' or the Trust assert an Avoidance Action or other affirmative claim for recovery until such Avoidance action or other affirmative claim is resolved; (ii) the Trust's share of the Net Recoveries from the Trust Assets; <u>provided however</u>, that no distribution shall be made to any GUC against which

such a Cause of Action is asserted until such Cause of Action or affirmative claim is resolved; and (iii) the balance of any remaining Trust Assets until and unless all Allowed GUC Claims are paid in full.

(c)    *Voting*: Class 11 is Impaired under the Plan. Holders of Claims in Class 11 are entitled to vote to accept or reject the Plan.

### 4.12    **Class 12 – Co-Debtor and Non-Debtor Affiliate Claims.**

(a)    *Classification*: Class 12 consists of all Co-Debtor and Non-Debtor Affiliate Claims. For purposes of classification and treatment under the Plan, all Class 12 Claims of all Debtors are being treated as one Class.

(b)    *Treatment*: All Co-Debtor and Non-Debtor Affiliate claims shall be canceled, discharged, released, and extinguished in full as of the Effective Date.

(c)    *Voting*: Class 12 is either Unimpaired, in which case the Holders of such Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired and not receiving any distribution under the Plan, in which case the Holders of such Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each Holder of a Class 12 Claim is not entitled to vote to accept or reject the Plan.

### 4.13    **Class 13 – Subordinated Claims.**

(a)    *Classification*: Class 13 consists of all Subordinated Claims. For purposes of classification and treatment under the Plan, all Class 13 Claims of all Debtors are being treated as one Class.

(b)    *Treatment*: Allowed Claims in Class 13 shall receive no payment under the Plan.

(c)    *Voting*: Class 13 is Impaired, and such Holders of Class 13 Claims are conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

### 4.14    **Class 14 –Interests in Corporate Debtors.**

(a)    *Classification*: Class 14 consists of all Interests in Debtors. For purposes of classification and treatment under the Plan, all Class 14 Claims of all Debtors are being treated as one Class.

(b)    *Treatment*: On the Effective Date, all Interests in Debtors shall be canceled, discharged, released, and extinguished in full as of the Effective Date.

(c)    *Voting*: Class 14 is Impaired, and such Holders of Class 14 Claims are conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

## C.    SPECIAL PROVISIONS GOVERNING UNIMPAIRED CLAIMS

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

## D.    ELIMINATION OF VACANT CLASSES.

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of voting on the Plan.

## E.    SECTION 1129(a)(10) AND 1129(b) CONFIRMATION

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article IV of the Plan. The Debtors shall seek Confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XII of the Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

## F.    OTHER PRESUMED ACCEPTANCE OR REJECTION OF THE PLAN

To the extent that Claims or Interests of any Class receive no distribution under the Plan, each Holder of a Claim or Interest in such Class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. To the extent that Claims or Interests of any Class are Reinstated, each Holder of a Claim or Interest in such Class is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

## G.    EQUITY INTEREST

Holders of Debtors' Interests are not receiving any distribution under the Plan on account of such Interests.

## H.    CONTROVERSY CONCERNING IMPAIRMENT

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## I.    SUBORDINATED CLAIMS AND INTERESTS

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal,

and equitable or contractual subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to Section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors or either Trust reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF PLAN

5.1  **Reorganized OOS and KCM.** Upon the Effective Date of the Plan, all of the existing stock of the Debtors will be canceled. The Reorganized OOS and KCM will issue the New Equity Interests, which shall represent all of the issued and outstanding equity of the Reorganized OOS and KCM to the Plan Funder. The assets acquired by the Purchaser via purchase of the New Equity shall include all assets necessary or related to the businesses including cash, receivables, equipment, vehicles, office equipment, software and intellectual property.

5.2  **Source of Plan Payments.** On or before the Effective Date, the Plan Funder, shall fund the Plan Payment as set forth in the Plan. In addition to the Plan Payment, the Plan Funder will sell the Homestead Excess Acreage to pay the trust fund portion of the Allowed Priority and/or Secured Tax Claim of the Internal Revenue Service. The sale will be accomplished either in a single transaction or through the development and sale of lots.

5.3  **Creation of the Trust.** Confirmation of the Plan shall effect the formation of the Trust. The Causes of Action and any proceeds from sale of the Excess Equipment shall be transferred to the Trust by the Debtors. The Trust Payment shall be funded to the Trust by the Plan Funder from the remainder of the Plan Payment. The specific terms, conditions, and rules governing the Trust will be contained in the Trust Agreement, a copy of which will be filed with the Court not less than ten (10) days prior to the Confirmation Hearing.

5.4  **Initial Funding of the Trust.** The Trust Payment will be funded to the Trust on the Effective Date and will be used for the payment of Allowed Claims and the evaluation and pursuit of the Causes of Action.

5.5  **Sale of Equipment**. The Debtors, including the Reorganized Debtor in conjunction with KCM, will liquidate the Excess Equipment. Debtors will supplement with a Schedule of Anticipated Equipment to be sold. The Debtors contends that this equipment does not represent a significant portion of the value of their aggregate assets. Nevertheless, the Corporate Debtors may file a motion to sell or may otherwise seek to sell these assets following confirmation of the plan.

5.6  **Sale of Excess Real Property**. The Individual Debtors may file a motion to sell or may otherwise seek to sell the Excess Real Property prior to or following confirmation of the plan, and pay any Allowed Secured Claims secured thereby.

5.7  **Payments Due Under the Plan.** Payments to be made under the Plan will come from the Trust Assets.

5.8  **Amendments to Organizational Documents.** The Reorganized OOS' organizational documents shall be amended as required by the Plan Proponents and as necessary to

satisfy any provisions of this Plan and Section 1123(a)(6) of the Bankruptcy Code. All amendments to the organizational documents of the Reorganized OOS contemplated by this Plan shall be filed with the appropriate filing offices on the Effective Date or as soon thereafter as is reasonably practicable and shall become effective on the date so filed. The Debtor entities not being reorganized will be dissolved.

5.9    **Retention of the Debtors' Property.** On the Effective Date, unless otherwise noted herein, all property of the Corporate Debtors other than the Trust Assets shall vest in the Reorganized OOS, free and clear of all Liens, claims and encumbrances except for those Liens created pursuant to the Plan or otherwise preserved as provided in the treatment of creditors under this Plan. On the Effective Date, unless otherwise noted herein, all Exempt Property of the Mahones shall vest in the Mahones, free and clear of all Liens, claims and encumbrances except for those Liens created pursuant to the Plan or otherwise preserved as provided in the treatment of creditors under this Plan.

### 5.10    Provisions Governing Subcontractor Claims.

(a)    *Preservation of Subcontractor Liens.* Notwithstanding any other provision in this Plan, the Bankruptcy Code, or nonbankruptcy law, all Subcontractor Liens, including without limitation, any Subcontractor Liens encumbering the Debtors' or their bankruptcy estates' accounts receivable or any assets owned by third parties, are hereby preserved, without limitation and without impairment, on and after the Effective Date and without further action or commencement of any proceeding by any Holder of such Subcontractor Lien, but subject to any defenses, counterclaims, arguments, or other rights any Entity may have with respect to such Subcontractor Lien.

(b)    *Resolution of Debtor Causes of Action Related to Subcontractor Claims; Effect on Subcontractor Liens.* On and after the Effective Date, the Trust shall seek to collect, compromise, discharge, or settle any Cause of Action of the Trust, that relates to, or arises in connection with, any project, contract, or client of the Debtors and for which a Subcontractor Claim or Subcontractor Claims have been asserted against the Debtors and their bankruptcy estates. Upon the resolution of any such Cause of Action, whether by compromise, discharge, or final order of the Bankruptcy Court or any other court of competent jurisdiction and the payment, if any, by any third party to the Trust of any amount called for or required by such settlement, compromise, or final order, the Trust shall immediately pay any Allowed Subcontractor Claim(s) that relate to or arise in connection with such settled or resolved Cause of Action. Any Subcontractor Lien or Subcontractor Liens securing such Allowed Subcontractor Claim(s) shall be immediately extinguished, released, and waived in their entirety upon the payment of such Allowed Subcontractor Claim(s) as contemplated in Article III.D. The Trust or any third party that owns property or assets encumbered by any such extinguished Subcontractor Lien(s) may file termination statements, waivers, or releases of lien in any required jurisdiction to remove any record, notice, affidavit, filing, or financing statement recorded to attach, perfect, or otherwise notice any such Subcontractor Lien(s).

(c)    *Stay of Enforcement of Subcontractor Liens.* On the Effective Date and for as long as this Plan remains in effect, no Holder of a Subcontractor Claim may enforce, commence, continue, or otherwise pursue enforcement of, any Subcontractor Lien against any property or assets of the Debtor or of any other Entity that owns property or assets encumbered by any such Subcontractor Lien.

(d)    *Extension of Time to Enforce Subcontractor Liens.* On the Effective Date, any period for commencing or continuing a civil action or proceeding in a court other the Bankruptcy Court on,

related to, or in connection with, a Subcontractor Lien, including without limitation a civil action for the maintenance or continuation of perfection of such lien or encumbrance, whether under (i) applicable nonbankruptcy law, (ii) any order entered in a nonbankruptcy proceeding, or (iii) any agreement that fixes a period within which such Holder may commence such an action or civil proceeding, shall be extended for as long as the Plan remains in effect, or until such Subcontractor Lien is extinguished by this Plan or under nonbankruptcy law.

## ARTICLE VI

## THE TRUST

6.1     **Purposes for the Trust.** The primary purposes of the Trust shall be:

(a)     to litigate, prosecute, settle or otherwise resolve the Causes of Action;

(b)     to defend any counterclaims relating to the Causes of Action;

(c)     to receive the Trust Payment and the Excess Equipment

(d)     to make the payments to Creditors as set forth in this Plan; and

(e)     to do anything necessary, related or incidental to the foregoing.

6.2     **Term.** The Trust shall terminate after a term of five (5) years.  Each Trustee may extend the term of its Trust if circumstances require such extension.

6.3     **Beneficiaries of the Trust.** The beneficiaries of the Trust shall be the Holders of Allowed Claims who are to receive distributions from the Trust in accordance with the terms of this Plan.

6.4     **Appointment of the Trustee.**  The initial Trustee and any successor trustee shall be selected by the Debtors and the Committee.  Any successor trustee shall be selected by the Trust Oversight Committee.

6.5     **Powers of Trustee.** Except as otherwise provided in this Plan, each Trustee shall have all of the following rights and powers:

(a)     Administer the Trust Assets, receive the Trust Payment, and make the payments to Creditors as provided in this Plan and the Trust Agreement;

(b)      Receive and hold, to have exclusive possession and control thereof as permissible under applicable law, maintain and administer legal proceedings;

(c)     Employ, retain or replace professional persons, including attorneys, accountants, appraisers, investment advisors, expert witnesses, insurance adjustors, or other persons whose services may be necessary or advisable, in the judgment of the Trustee, to advise or assist him in the discharge of the duties of the Trustee, or otherwise in the exercise of any powers vested in the Trustee or as the Court may direct and, subject to the provisions of the Trust, to pay to such professionals reasonable compensation (in this regard, the Trustee may employ professionals employed by the Debtors);

(d)     Collect, compromise, settle or discharge any claim of the Trust and pursue, in his discretion, on behalf of the Trust as the designated representative of the Debtors, to either judgment, order, compromise or settlement, any of the Causes of Action, except to the extent that any such claims have been specifically compromised, settled and released pursuant to the Plan or the Trust Agreement, and to defend any counterclaims, cross-actions or other offsets;

(e)     Distribute the Net Recoveries from the settlement, prosecution or other disposition of the Causes of Action;

(f)     Seek a determination from the Court of the Allowed Amount of any Claim or Interest against the Trust, including filing objections thereto and pursuing any contest or adversary proceedings with regard thereto and entering into any compromise or settlement thereof, and to execute any contract, including, without limitation, any release in connection with any such compromise or settlement. However, any Claim which is compromised, settled and/or released in connection with any such compromise or settlement agreement set forth in this Plan or the Trust Agreement is excluded;

(g)     Maintain possession of the originals of any and all instruments and documents pertaining to the Causes of Action and any liabilities of the Trust;

(h)     pay all expenses incurred in connection with the administration of the Trust;

(i)     calculate and make distribution to holders of Allowed Claims all as set forth in this Plan;

(j)     With regard to the Causes of Action, sue and be sued, including filing and defending contested matters and adversary proceedings in the Court and actions or other proceedings in any other court or before any administrative agency and to pursue or defend any appeal from any judgment or order therefrom, including, without limitation, pursuing claims of the Trust, filing suit or adversary proceedings or contested matters in connection therewith and defending any counterclaims, cross-actions or other offsets in connection therewith and entering into any compromise, settlement, release, discharge or dismissal of any of the claims, without Court approval or notice to any party, at any time, and for any consideration that the Trustee believes to be in the best interests of the Trust;

(k)     Enter into contracts binding upon the Trust (but not the Trustee) which are reasonably incident to the administration of the Trust and which the Trustee, in the exercise of his best judgment, believes to be in the best interests of the Trust;

(l)     Abandon and charge off as worthless, in whole or in part, those Causes of Action which in the judgment of the Trustee, are in whole or in part uncollectible;

(m)     Pay taxes and excises lawfully owing by or chargeable against the Trust or property in the possession or control of the Trustee and to take any action necessary or advisable to obtain the prompt determination of any such tax liability;

(n)     Procure and pay premiums on policies of insurance to protect the Trust, against liability for personal injuries or property damage or against loss or damage by reason of fire, windstorm, collision, theft, embezzlement, breach of fiduciary duty or other hazards

against which insurance is normally carried in connection with the activities or on properties such as those with respect to which the Trustee procures such insurance;

(o)     Allocate items, receipts or disbursements either to corpus or income (or partially to corpus and partially to income) of the Trust as the Trustee, in the exercise of his best judgment and discretion, deems to be proper, without thereby doing violence to clearly established and generally recognized principles of accounting;

(p)     Deal with any governmental regulatory authority in obtaining such approvals or exemptions as may, in the opinion of the Trustee, be necessary or desirable with respect to the administration of the Trust; and

(q)     Exercise every power granted to a trustee under the Bankruptcy Code, including the rights and benefits afforded by Sections 108 and 546 of the Bankruptcy Code, which may increase the enumerated powers of the Trustee otherwise granted herein, and engage in any and all other activities, not in violation of any other terms of the Plan and Trust Agreement, which, in the judgment of the Trustee, are necessary or appropriate for the proper liquidation, management, investment and distribution of the assets of the Trust in accordance with the provisions of the Trust Agreement, to effectuate the provisions of the Plan, and to perform such other tasks as the Bankruptcy Court may direct.

6.6     **Payment of Trust Fees and Expenses; Reserves.** Each Trustee may establish reserves (incident to funding the pursuit of Causes of Action) and accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which cash and property may be deposited and checks drawn or withdrawals made to pay or distribute such amounts as permitted or required for fees, expenses and Trust liabilities pursuant to this Plan and the Trust Agreement. Such funds shall not be subject to any claim by any entity except as provided under this Plan. All fees and expenses of the Trust, and its agents and employees incurred in connection with (i) the objection to, and settlement, liquidation and payment of claims and interests against the Debtor; (ii) the Causes of Action; or (iii) administering the Trust and completion of the Plan shall, subject to the review and approval of the Trustee, be paid.

6.7     **Compensation of Trustee and Persons Employed by the Trust. The** Trustee shall be paid in accordance with his customary hourly rate with respect to the administration of the Trust. All compensation paid to the Trustee shall be subject to the review and approval of the Trust Oversight Committee. All persons or entities employed by the Trustee shall be entitled to compensation from the Trust and such compensation shall be subject to the review and approval of the Trustee.  In no event shall any court approval be required for payment of the compensation of the Trustee or his professionals.

6.8     **Authorization.** All Classes of creditors that vote to accept the Plan hereby authorize the Trustee to act on behalf and in place of such creditor to the extent provided herein and in any document and instrument delivered hereunder or in connection herewith and to take such other action as may be incidental thereto, including, without limitation, the exercise of any discretion in connection with any determination or decision required for the administration of this Plan and the granting of any waiver, consent, amendment, suspension, supplementation, extension, renewal or other modification with respect to any and all provisions of this Plan on a conditional or unconditional basis.

6.9 **Exculpation.** The Trustee shall be entitled to rely upon advice and opinions of counsel concerning legal matters, the authenticity of affidavits, letters, telegrams, cablegrams and other methods of communication in general use and usually accepted by businesspersons as genuine and what they purport to be, and upon this Plan and any schedule, certificate, statement, report, notice or other writing which it believes to be genuine or to have been presented by a proper entity. Except for its or their own gross negligence or intentional misconduct, neither the Trustee, nor any of his employees or agents shall (a) be responsible for any recitals, representations or warranties contained in, or for the execution, validity, genuineness, effectiveness or enforceability of this Plan, (b) be under any duty to inquire into or pass upon any matter or to make any inquiry concerning the validity of any representation or warranty of the Debtor or the performance by the Debtor of their obligations or (c) in any event, be liable as such for any action taken or omitted by it or them. Each creditor agrees and acknowledges that the Trustee makes no representations or warranties with respect to the legality, validity, sufficiency or enforceability of this Plan.

6.10 **Liability of Trustees.** No recourse shall ever be had, directly or indirectly, against the Trustee by legal or equitable proceedings or by virtue of any statute or otherwise, or by virtue of any deed of trust, mortgage, pledge or note, or by virtue of any promises, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee for any purposes authorized, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Trustee, whether in writing or otherwise, shall be enforceable only against and be satisfied only by the Trust, and every undertaking, contract, covenant or agreement entered into in writing by the Trustee may provide expressly against the personal liability of the Trustee. The Trustee shall not be liable for any act he may do or admit to do as the Trustee hereunder while acting in good faith. The Trustee shall not be liable in any event except for his own gross negligence or willful fraud or misconduct. The Trustee shall be indemnified and held harmless by the Trust for any and all loss by reason of his acts or contracts for the Trust except for loss arising out of the Trustee's own gross negligence or willful fraud or misconduct. This provision does not eliminate the Trustee's responsibilities and obligations regarding the filing of federal tax returns, as applicable, and the payment of any taxes that are due.

6.11 **Books and Records.** The Trustee shall keep or cause to be kept books containing a description of all Claims, assets, receipts, disbursements and escrows, which records shall be open to inspection at all reasonable times upon reasonable request of any beneficiary of the Trust.

6.12 **Delegation of Powers.** The Trustee shall be entitled to delegate such authority to his employees and agents as he shall reasonably deem necessary to perform his responsibilities under this Plan.

6.13 **Resignation, Death or Removal.** The Trustee or any successor trustee may resign upon thirty (30) days written notice. In that event, or in the event of the death of a Trustee or a successor trustee, a substitute or successor Trustee will be appointed to perform the duties, functions and obligations and to exercise the rights and authority of the Trustee as described in the Plan.

6.14 **Investment of Funds.** All proceeds and other cash (except for amounts which a Trustee determines, in his sole discretion, are needed for immediate payments and distributions) shall be invested and reinvested by the Trust in United States Treasury Bills or in certificates of deposits, demand deposit or interest-bearing accounts of banking institutions acceptable to the Trust or such other investments as shall be prudent and appropriate under the circumstances, in such amounts and

upon such terms as a reasonable and prudent fiduciary would select and with a view toward sufficient liquidity to make the distributions contemplated by this Plan. All interest earned on such proceeds and other cash shall be retained by the Trust and distributed in accordance with this Plan.

6.15    **Reserves.** Prior to any distribution of any Net Recoveries, the Trustee shall establish adequate reserves for the operation of the Trust, pursuit of the Causes of Action and any Contested Claims that may become Allowed Claims after the Effective Date.

6.16    **No Distributions Pending Allowance of Claims.** No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim, or Allowed Interest, as determined by Final Order. In the event that any amounts held in such reserve remain after all objections to Contested Claims have been resolved, the Trustee shall make distributions of funds held in reserve on account of Claim objections on a Pro Rata basis pursuant to the terms of this Plan.

6.17    **Treatment of Contingent or Unliquidated Claims.** Until such time as a Contingent Claim becomes fixed and Allowed, such Claim shall be treated as a Contested Claim for purposes related to voting, allowance, and distributions under this Plan. The Bankruptcy Court upon request by the Debtor or, after the Effective Date, by the Reorganized OOS or the Trustee, as the case may be, shall in a summary proceeding for each such contingent Claim or unliquidated Claim, by estimation determine the allowability of each such contingent or unliquidated Claim.

6.18    **Interim Distribution.** If and when, in the opinion of the Trustee, there is sufficient cash and proceeds to justify an interim distribution to beneficiaries of the Trust, the Trustee may make such interim distributions to holders of such Allowed Claims as he deems appropriate in his sole and absolute discretion; provided that he shall maintain sufficient reserves.

6.19    **Unclaimed Distributions.** Any proceeds or other cash held for the benefit of any holder of an Allowed Claim, if unclaimed by the distributee within three months after the distribution, shall be redeposited into the fund and made available for other Allowed Claims, and all liability and obligations of the Debtor and the Trust to such distributee with respect thereto shall thereupon cease.

6.20    **Form of Payments.** Payments to be made by a Trustee pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Each Trustee may disregard, and elect to not pay, Allowed Claims whose Pro Rata share of a proposed distribution is less than $100.00. In such case, the Allowed Amount of such Claims shall be reduced to zero and such funds shall be retained as part of that Trust.

6.21    **Termination.** Upon termination of the Trust, the powers and responsibilities of the Trustee and his representatives shall terminate.

# ARTICLE VII

## THE REORGANIZED OOS, CORPORATE GOVERNANCE, AND CONVERTED DEBTORS

7.1    **Issuance of New Equity.** All shares issued pursuant to this Plan are not issued under Section 1145 (a)(1) and are subject to all securities laws and regulations relative to their transferability and their issuance. Such shares that are issued not on account of a claim or interest, will be issued

pursuant to Section 4(2) of the Securities Act of 1933, as amended (the "Securities Act"). In this regard, the Debtor advises that such shares will not be registered pursuant to the Securities Act or any applicable state securities laws, that such shares will be characterized as "restricted securities" under federal securities laws, and that under such laws and applicable regulations such shares cannot be sold or otherwise disposed of without registration under the Securities Act or an exemption therefrom.

7.2     **Officers and Directors.** The officers of the Reorganized OOS will be selected by the Plan Funder.

7.3     **Private Company.** The single surviving Corporate Debtor that is the Reorganized OOS will, upon entry of the Confirmation Order, continue to be a privately held company. Nothing herein restricts the Reorganized OOS from thereafter seeking to become a registered publicly traded company in accordance with any and all applicable statutory and regulatory requirements.

7.4     **Closing of Chapter 11 Cases.** Upon the occurrence of the Effective Date, the Reorganized Debtor shall be permitted to close all of the Chapter 11 Cases except for the Chapter 11 Case of OOH, and all contested matters and adversary proceedings relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of OOH; *provided* that for purposes of Sections 546 and 550 of the Bankruptcy Code, the Chapter 11 Cases shall be deemed to remain open until the Chapter 11 Case of OOH has been closed.

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case of OOH in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     **General Rejection of Executory Contracts.** On the Effective Date, except as otherwise provided herein, the Debtors will be deemed to have rejected all Executory Contracts in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the Executory Contract List as Executory Contracts to be assumed; (2) have been previously assumed or rejected by the Debtors pursuant to a Final Order; or (3) are the subject of a motion to assume filed on or before the Confirmation Date.

Except as otherwise set forth in this Plan, entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts as set forth in the Executory Contract List, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise set forth herein, assumptions or rejections of Executory Contracts pursuant to the Plan are effective as of the Effective Date. Each Executory Contract assumed pursuant to the Plan or by Final Order of the Bankruptcy Court but not assigned to a third party before the Effective Date shall revest in, and be fully enforceable by, the Reorganized Debtor in accordance with the terms of such Executory Contract, except as such terms may have been modified by the provisions of the Plan or any Final Order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts pending on the Effective

Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Debtors or the Reorganized Debtor, as applicable.

Notwithstanding anything to the contrary in the Plan, after the Confirmation Date, an Executory Contract identified as an Executory Contract to be rejected on the Executory Contract List may not be assumed by the Reorganized Debtor unless the applicable lessor or contract counterparty has (x) consented to such assumption or (y) objected to the rejection of such Executory Contract on the basis that such Executory Contract should not be rejected and should instead be assumed (and such objection remains outstanding).

If any provision of the Bankruptcy Code or the Bankruptcy Rules require the Debtors to assume or reject an Executory Contract by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the filing of a motion or identification in the Executory Contract List, to assume or reject such Executory Contract prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

8.2    **Claims Based on Rejection of Executory Contracts.** Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the latest of: (1) the date of entry of a Final Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date. Any Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtor, the Trust, or their property without the need for any objection by the Reorganized Debtor or the Trust or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity. Any Claim arising out of the rejection of the Executory Contract shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall constitute General Unsecured Claims, shall be treated as such under the Plan, and may be objected to as provided in the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

8.3    **Cure of Defaults for Assumed Executory Contracts.** The Debtors or the Reorganized Debtor shall serve notices of proposed assumptions to the counterparties to the Executory Contracts identified in the Executory Contract List as Executory Contracts to be assumed by no later than five (5) days after the Confirmation Date, which notices shall include a description of the procedures for resolving disputes related to the proposed assumption of such Executory Contracts.

Unless otherwise agreed in writing by the counterparty or counterparties to the applicable Executory Contract, any objection by any such counterparty(ies) to a proposed assumption or related Cure amount must be filed and served by no later than the date and time specified in the notice (which date and time may be no earlier than thirty-five (35) days after the Confirmation Date). The Reorganized Debtor may reconcile and settle, in the ordinary course of the Reorganized Debtor's business, any dispute (following a timely filed objection) regarding any Cure or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court.

Any counterparty to an Executory Contract that does not timely object to the proposed assumption or Cure amount (including any request for an additional or different cure amount) will be deemed to have assented to such assumption or Cure amount. Any untimely request for an additional or different Cure amount shall be disallowed, shall be forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any other Entity or any further notice to, or action, order, or approval of, the Bankruptcy Court. The Debtor or the Reorganized Debtor, as applicable, shall pay the Cure amounts, if any, by no later than forty-five (45) days after the Confirmation Date; *provided* that if a dispute regarding assumption or Cure is unresolved as of such date, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after such dispute is resolved. Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure.

If the Bankruptcy Court determines that the Allowed Cure cost with respect to any Executory Contract is greater than the amount set forth in the Executory Contract List (such greater amount, the "Court-Ordered Cure Cost"), the Reorganized Debtor may either: (a) pay the Court-Ordered Cure Cost (which payment must be made no later than five (5) days after the Bankruptcy Court's determination) and thereby assume such Executory Contract in accordance with the terms of this Plan or, (b), within fourteen (14) days after such determination, designate such Executory Contract as an Executory Contract to be rejected, in which case that Executory Contract will be deemed rejected on the date the Reorganized Debtor files notice of such designation in the Chapter 11 Cases (which filed notice the Reorganized Debtor must also serve on the counterparty to that Executory Contract). Notwithstanding anything else to the contrary herein, the Debtors or the Reorganized Debtor, as applicable, and the applicable counterparty shall be entitled to the full benefits of the Executory Contract (including without limitation, any license thereunder) while any Cure dispute remains pending and unresolved.

## ARTICLE IX

## PROVISIONS FOR THE PURSUIT, FUNDING, SETTLEMENT, AND ADJUSTMENT OF CLAIMS

9.1    **Preservation of Claims and Causes of Action.** Causes of Action shall mean any and all claims, causes of action, cross claims or counterclaims held or assertable by the Debtors, including but not limited to:  (i) Avoidance Actions; (ii) any claim or cause of action arising from any payment made to any person or entity during the pendency of these cases; and (iii) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtors have or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, and obligation of good faith and fair dealing, whether or not in connection with or related to the loan papers and this Plan, at law

or in equity, in contract in tort, or otherwise, known or unknown, suspected or unsuspected, but excluding any Claims or Causes of Action which are released in the Plan or the Confirmation Order, are hereby preserved and retained for enforcement by and for the benefit of the Reorganized OOS and/or the Trust effective as of the Confirmation Date. It is the intent of the Debtors that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtors' schedules, and shall include any claims discussed in the Disclosure Statement. On the Effective Date, the Causes of Action shall be transferred to the Trust.

9.2     **Funding of the Causes of Action.** The Trustee will be responsible for evaluating and pursuing any or none of the Causes of Action based on his/her reasonable business judgment in consultation with the Trust Oversight Committee. The pursuit of the Causes of Action shall be funded from the Trust Payment and either litigation financing of the Mahones or a third-party, contingency fee agreements, some combination thereof, or other available sources.

9.3     **Representative of Estates.** The Trustee of the Trust is appointed as the representative of the estate pursuant to §1123(b)(3) of the Code to pursue the Avoidance Actions and is the only entity authorized to recover preferences, fraudulent conveyances, and all other avoidance actions under Chapter 5 of the Bankruptcy Code. Unless otherwise ordered by the Bankruptcy Court, no other party shall have the right or obligation to pursue any Avoidance Actions or other Causes of Action. Any creditor determined to have received a transfer that is avoidable pursuant to Sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to the Trust the determined amount of the avoided transfer prior to receiving any distribution.

9.4     **Compromise and Settlement.** The Trustee with the advice of the Trust Oversight Committee, shall have the right to pursue, compromise or settle any claim or Cause of Action or Avoidance Actions, and any such compromise and settlement of any claim, Cause of Action may be effected without the necessity of Bankruptcy Court proceedings under Bankruptcy Rule 9019 or otherwise.

## ARTICLE X

## EFFECT OF CONFIRMATION, DISCHARGE, RELEASES, AND INJUNCTION

10.1     **Vesting of Property.** Except as otherwise provided in the Plan, Confirmation of the Plan shall vest all of the property of the Debtors other than the Trust Assets in the Reorganized OOS.

10.2     **Property Free and Clear.** Except as otherwise provided in the Plan, all property dealt with by the Plan shall be free and clear of all claims, liens and interests of any party as of the Effective Date. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

10.3     **Legal Binding Effect; Discharge of Claims and Interests.** The provisions of this Plan shall: (i) bind all Claimants and Interest holders, whether or not they accept this Plan, and (ii) discharge the Debtors from all Claims, claims, debts and liabilities that arose before the Petition Date, and from any Claims, claims, debts and liabilities, including, without limitation, any Claims, claims, debts and liabilities of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, that arose, or have been asserted against the Debtors at any time before the entry of the Confirmation Order or that arise from any pre-Confirmation conduct of the Debtors whether or not the Claims, claims, debts and liabilities are known or knowable by the Claimant or Interest holder. In addition,

the distributions provided for under this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtors or any of its assets or properties, including any Claim or Interest accruing after the Petition Date and prior to the Effective Date.

10.4    **Effect on Third Parties.** Except as specifically provided in this Plan or in the Confirmation Order, nothing contained in this Plan or in the documents to be executed in connection with the Plan shall affect any Creditors' rights as to any third party.

10.5    **Release and Discharge of Claims and Interests.** Except as otherwise provided by the Plan or the Confirmation Order, the consideration distributed under the Plan shall be in complete satisfaction, release and discharge of the Debtors and their assets from all Claims or Interests of any Creditor or holder of an Interest, including Claims or Interests arising prior to the Effective Date.

10.6    **Permanent Injunction.** Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold or may hold Claims or Interests that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or the Reorganized OOS, as the case may be, on account of Claims against or Interests in the Debtors; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized OOS, or any assets or property of same; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtors or Reorganized OOS, as the case may be, arising from a Claim. This provision does not enjoin the prosecution of any claims that arise after the Effective Date, nor does it enjoin the determination of the Allowed Amount of any Claims that arose prior to the Effective Date by a court of competent jurisdiction. This provision does not enjoin the collection of any tax owing to any governmental entity, including the Internal Revenue Service, to the extent that such tax is created in any manner and over any period of time by the effectuation of the terms of the Plan once confirmed. Further, this provision does not enjoin the collection of any administrative tax claim by the Internal Revenue Service from any source allowed by law.

10.7    **Exculpation.** The Debtors and the Committee and their professionals shall, on and after the Confirmation Date, not be liable for any Cause of Action arising in connection with or out of the administration of this Chapter 11 Case, the formulation, negotiation or implementation of this Plan, the good faith solicitation of acceptances of this Plan in accordance with Bankruptcy Code §1125(e), pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, except for gross negligence or willful misconduct as determined by a Final  Order of the Bankruptcy Court. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or Cause of Action against the Plan Proponent or professionals employed by the Plan Proponents for which such persons have been exculpated from liability pursuant to the preceding sentence.

10.8    **Termination of Committee**. The Committee shall terminate on the Effective Date and cease to exist.

10.9   **Default Provision – Internal Revenue Service**.   Notwithstanding any other provision or term of this Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its claims, including any administrative claim (the IRS Claim):

(1) Notwithstanding any other provision in the Plan, if the Debtor, the Reorganized Debtor, or any successor in interest fails to pay when due any payment required to be made on federal taxes, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan, the Confirmation Order, or the Internal Revenue Code (26 U.S.C.), or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the IRS shall be entitled to give the Debtor, the Reorganized Debtor and/or any successor in interest and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply to the IRS:

(A) The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and collection as provided under the Internal Revenue Code;

(B) The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or in the Confirmation Order shall, with regard to the IRS only, lift or terminate without further notice or hearing by the Court, and the entire imposed liability owed to the IRS, together with any unpaid current liabilities, may become due and payable immediately; and

(C) The IRS shall have the right to proceed to collect from the Debtor, the Reorganized Debtor or any successor in interest any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(2) If the IRS declares the Debtor, the Reorganized Debtor, or any successor in interest to be in default of the Debtor's, the Reorganized Debtor's and/or any successor in interest's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor, Reorganized Debtor, and/or any successor in interest. Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States or its agency the IRS of the right to declare that the Debtor, Reorganized Debtor, and/or any successor in interest is in default.

(3) If full payment is not made within fourteen (14) days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default the IRS shall be

entitled to proceed as set out in paragraphs (A), (B), and/or (C) herein above without further notice to the Debtor, the Reorganized Debtor, or any successor in interest, or its counsel. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(4) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor, the Reorganized Debtor, and/or any successor in interest to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor, the Reorganized Debtor and/or any successor in interest to the Internal Revenue Service.

(5) The term "any payment required to be made on federal taxes," as used herein above, is defined as: any payment or deposit required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used herein above, is defined as: any tax return or report required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1 **Retention of Jurisdiction.** The Bankruptcy Court shall retain subject matter jurisdiction over these Cases after Confirmation, notwithstanding Consummation or substantial consummation, for the following purposes:

(a) to consider and effect any modification of this Plan under Section 1127 of the Bankruptcy Code;

(b) to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

(c) to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

(d) to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

(e) to hear and determine all claims that the Debtor, as debtor in possession qua trustee, the Reorganized OOS as the successor and designated representative of the Debtors, or the Trustee and the Estate could assert under the Bankruptcy Code;

(f)     to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

(g)     to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan;

(h)     to approve the reasonableness of any payments made or to be made, within the meaning of Section 1129(a)(4) of the Bankruptcy Code;

(i)     to exercise the jurisdiction granted pursuant to Section 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtors;

(j)     to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan;

(k)     to hear and determine any controversies with respect to any settlements approved by the Court;

(l)     to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Trust or the Reorganized OOS;

(m)     to hear, determine and preside over the Causes of Action brought by the Trustee in the Bankruptcy Court.

11.2   **No Limitation.** Nothing contained in this Article XI shall be construed so as to limit the rights of Reorganized OOS or the Trust to commence or prosecute any claim in any court of competent jurisdiction.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1   **Request for Relief under Section 1129(b).** In the event any Impaired Class of Interests shall fail to accept this Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtors request the Bankruptcy Court to confirm this Plan in accordance with the provisions of Section 1129(b) of the Bankruptcy Code.

12.2   **Modification.** This Plan shall not be modified except upon the written agreement of the Debtors.

12.3   **Headings.** All headings utilized in this Plan are for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

12.4   **Securities-Related Claims.** All Interests or Claims asserted based upon or related to ownership of the equity Interests of the Debtors, or Claims relating to damages attributable to or arising from any purchase or sale thereof, shall be treated in Class 10.

12.5   **Due Authorization.** Each and every Claimant and Interest holder who elects to participate in the distributions provided for herein warrants that such Claimant or Interest holder is

authorized to accept, in consideration of such Claim against or Interest in the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant or Interest holder under this Plan.

12.6    **Authorization of Corporate Action.** All matters and actions provided for under this Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtors, or Reorganized OOS, shall be deemed to have occurred and be effective as provided herein, and shall be deemed to be authorized and approved in all respects without any requirement for further action by the equity stakeholders, officers or directors of the Debtor. Specifically, all amendments to the certificate of incorporation and By-laws of the Debtor pursuant to this Plan and all other corporate action on behalf of the Debtors or Reorganized OOS, as may be necessary to put into effect or carry out the terms and intent of this Plan and the orders and decrees of the Bankruptcy Court entered in the Case, may be affected, exercised and taken without further action by the stakeholders, officers or directors of the Debtors.

12.7    **Further Assurances and Authorizations.** The Debtors or Reorganized OOS, if and to the extent necessary, shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan. All terms and provisions of this Plan shall be construed in favor of the Debtors.

12.8    **Additional Acts or Actions.** The Debtors may, but shall not be obligated to, take any action or commit any act that any of them determine to be necessary to facilitate the consummation, implementation, effectuation and execution of this Plan.

12.9    **Applicable Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

12.10    **Privileged Communications; Work Product.** For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Reorganized OOS and, to the extent necessary to prosecute any of the Causes of Action the Trust shall succeed to the interest of the Debtors and the Estates, to the extent provided by applicable law.

12.11    **No Interest.** Except as expressly stated in this Plan, or allowed by the Court, no interest, penalty or late charge is to be Allowed on any Claim subsequent to the Filing Date.

12.12    **No Attorneys' Fees.** No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtors, except as specified herein or as allowed by order of the Court.

12.13    **Post-Confirmation Actions.** After Confirmation, the Debtors may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan.

12.14  **Setoff.** Except as specifically provided in the Plan, no Creditor shall retain any contractual or statutory right to set off any asset in which the Debtors or Reorganized OOS has an interest in satisfaction of that Creditor's pre-petition Claim. Any right to set off a claim against an asset of Debtors or Reorganized OOS which is not specifically retained is waived.

12.15  **Payment Dates.** Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business day, except as may be provided in negotiable instruments requiring such payments.

12.16  **Notice of Default.** In the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the Reorganized OOS and the Trustee, with copies to counsel of record for the Reorganized OOS and Trustee, specifying the nature of the default. Upon receipt of the default notice, the Reorganized OOS and Trustee shall have ten (10) days to cure such default from the time of receipt of the default notice. If such default has not been cured within the applicable time period, the default may be brought to the attention of the Court or any other court of competent jurisdiction.

12.17  **Notices.** All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested.

DATED: May 19, 2025                    **ORYX OILFIELD SERVICES, LLC**

By: _/s/ Matthew J. Mahone_____
Its: Managing Member_____


**ORYX OILFIELD HOLDINGS, LLC**

By: _/s/ Matthew J. Mahone_____
Its: Managing Member_____


**KODIAK EXCAVATION AND UTILITIES, LLC**

By: _/s/ Matthew J. Mahone_____
Its: Managing Member_____


**KODIAK TRENCHING AND BORING, LLC**

By: _/s/ Matthew J. Mahone_____
Its: Managing Member_____

_/s/ Matthew J. Mahone_
**Matthew J. Mahone, Individually**

_/s/ Leigh Ann Mahone_
**Leigh Ann Mahone, Individually**

**LAW OFFICES OF FRANK J. WRIGHT, PLLC**

By: _/s/ Frank J. Wright_
  Frank J. Wright
  Texas Bar No. 22028800
  Jeffery M. Veteto
  Texas Bar No. 24098548

1800 Valley View Lane, Suite 250
Farmers Branch, Texas 75234
Telephone: (214) 935-9100
Email:  frank@fjwright.law
    jeff@fjwright.law

**COUNSEL FOR THE CORPORATE DEBTORS**

**SPECTOR & COX, PLLC**

By: _/s/ Sarah M. Cox_
  Sarah M. Cox
  Texas Bar No.24119316

12770 Coit Road, Ste. 850
Dallas, TX 75251
Telephone: (214) 310-1321
Email: sarah@spectorcox.com

**COUNSEL FOR MATTHEW JOE MAHONE AND LEIGH ANN MAHONE**